227 So.2d 573

**Cecelia WILLIS, as guardian of the Estate of Dorothy Ann James, a non compos mentis**

v.

**William Hoyt JAMES et al.**

1 Div. 525.

Supreme Court of Alabama.

Oct. 23, 1969.

Michael J. Salmon, Mobile, Ernest M. Bailey, Fairhope, for appellant.

Chason, Stone & Chason, Bay Minette, and Cecil G. Chason, Foley, for appellees.

**674**

SIMPSON, Justice.

This case arises out of the following: On January 8, 1952, one Annie Cook, by warranty deed, conveyed to William Hoyt James and Dorothy James, husband and wife, an undivided one-half interest in 120 acres of land. Also on January 8, 1952, Annie Cook conveyed to Robert D. James and Flossie James, husband and wife, an undivided one-half interest in the same 120 acres of land.

Robert D. James and William Hoyt James are brothers. After they purchased the 120 acres of land described in the aforementioned deeds, each family went on the land and began farming operations. One house was on the land at the time of the purchase. Subsequently a second house was built on the 120 acres, and these brothers, along with their respective wives, lived in these two houses. They continued to farm the land.

On May 10, 1954, Dorothy James, the wife of William Hoyt James, was committed to Bryce Hospital. The testimony is that Dorothy James stayed in Bryce Hospital (a hospital for treating the mentally ill) following this May, 1954 commitment for some six months. Thereafter she was returned from time to time to Bryce, for further treatment. Representatives of Bryce Hospital testified on the trial of this case that new commitment papers are required any time a patient spends more than six consecutive months out of confinement. In 1958, on May 7th, Dorothy James was again committed to Bryce Hospital, the commitment papers being signed by a physician in Foley, Alabama, and commitment made under order of the Probate Judge of Baldwin County. In August of 1958, against the advice of her doctors, she was taken out of Bryce by her husband.

On October 11, 1958, Robert D. James, his wife, Flossie James, William Hoyt James and his wife, Dorothy James, executed a mortgage covering the 120 acres involved in this litigation, to one L. Irwin in the amount of $4,010.00.

On October 16, 1958, Dorothy James was returned to Bryce Hospital by a deputy sheriff of Baldwin County and the matron of the Baldwin County Jail. Dorothy James remained in Bryce Hospital at the time of the trial of this case.

On December 22, 1959, the mortgage to L. Irwin was assigned by Irwin to Bay Minette Production Credit Association.

On January 11, 1961, this same mortgage was assigned by Bay Minette Production Credit Association to D. S. James, the father of Robert D. James and William Hoyt James. This assignment and the one from Irwin to Bay Minette Production Credit Association were recorded on January 20, 1961.

On February 28, 1961 a foreclosure deed conveying the 120 acres, the subject of the October 11, 1958 mortgage, was executed to D. S. James.

On March 22, 1961, D. S. James and his wife, conveyed the same property, less one acre, to Robert D. James and Flossie James, husband and wife.

In July, 1963, William Hoyt James petitioned the Circuit Court of Baldwin County seeking a divorce from Dorothy James, contending as grounds therefor that Dorothy James was mentally insane and had been confined to Bryce Hospital for more than five years preceding the filing of the bill.

This present action was brought by Mrs. Cecilia Willis as guardian of the estate of Dorothy James seeking to have set aside the mortgage executed by the parties on October 11, 1958 and the foreclosure deed to the senior Mr. James of February 28, 1961, and in turn the deed of March 22, 1961 from the senior Mr. James to Robert

D. James and Flossie James, husband and wife.

The critical question in the case depends upon the validity of the October 11, 1958 mortgage, which the complainant contends is void because of the mental incapacity of Dorothy James at the time of the execution thereof. If this mortgage is void, then, of course, all subsequent conveyances based upon that mortgage must fall.

The bill alleged the following: That Dorothy Ann James and William Hoyt James were married in 1949 and that the other respondents were Robert D. James, a brother of William Hoyt James; Flossie James, wife of respondent Robert D. James; and Doris G. James, as executrix of the estate of D. S. James, deceased, who was the father of respondents William Hoyt James and Robert D. James, who died subsequent to the filing of the original bill. That in 1952 one Annie Cook conveyed to the ward Dorothy Ann James and respondent, William Hoyt James, as husband and wife, an undivided one-half interest in 120 acres of land in Baldwin County, Alabama, and that at the same time and by separate deed, the same grantor conveyed the other undivided one-half interest in the same 120 acres to respondent Robert D. James and Flossie James, as husband and wife. The bill alleged that thereafter the two couples lived in dwelling houses on the land, farmed the land, and from 1952 until about 1961 the decedent's father-in-law, D. S. James, lived within two miles of these two couples. The bill alleged that Dorothy Ann James became afflicted with mental illness and on May 10, 1954 was committed by the Judge of Probate of Baldwin County, Alabama, to the State mental hospital and that said-ward was again committed on May 7, 1958, by the same judge, again to Bryce Hospital in Tuscaloosa. The bill further averred that Dorothy Ann James remained at Bryce Hospital as a patient until the present time; and that since May 7, 1958, and at all times material to the matters complained of in the bill, Dorothy Ann James has been mentally incompetent and so men-

tally defective as to be unable to handle her affairs; and that respondents William Hoyt James, Robert D. James, Flossie James, and decedent D. S. James, were aware of such mental illness since 1954 and had knowledge of the same since at least May 7, 1958.

The bill went on to allege that on October 11, 1958, while Dorothy Ann James was on leave from Bryce Hospital, but still a patient, and while she was mentally incompetent, and while all of the respondents and the decedent, D. S. James, were aware of her mental incompetence, she was caused by the respondents to execute along with the respondents, William Hoyt James, Robert D. James, and Flossie James, a mortgage on the land involved in the amount of $4,000.00 to one L. Irwin; that said mortgage was assigned in 1959 by Irwin to Bay Minette Production Credit Association, and on January 11, 1961, was reassigned to decedent, D. S. James, for the sum of $2,500.00; and that decedent, D. S. James, when he purchased the mortgage, was aware that the said Dorothy Ann James had been mentally incompetent at the time she executed the same. It is further averred that in February, 1961 decedent, D. S. James, foreclosed the mortgage at a time when Dorothy Ann James was mentally incompetent as known to all respondents and to the decedent, D. S. James, and that while Dorothy James was a patient at Bryce Hospital, and thereafter in March, 1961, D. S. James, joined by his wife Doris G. James, for the sum of $1.00 conveyed to the respondents, Robert D. James and Flossie James, title to the property involved and that at the time of this conveyance all of the respondents were aware of the mental incompetence of Dorothy Ann James.

The bill averred that following this conveyance by the senior James in March, 1961 to Robert D. James and Flossie James, that respondents Robert D. James, Flossie James and William Hoyt James had continued to assess the property in all of their names until the present time and had continued to execute encumbrances, mortgages and con-

yeyances on the property as grantors. It was further averred that commencing in November, 1956, that. the said Dorothy James became possessed of a separate estate in money as an inheritance, which from her commitment to Bryce Hospital in May, 1958, her husband, William Hoyt James, had handled, and that at the time of the foreclosure by the senior James in March, 1961, and while Dorothy James was mentally incompetent and a patient at ·Bryce, she and her then husband had a cash account in money sufficient to prevent the foreclosure and a default in payment of the mortgage foreclosed if in fact a default existed, that such default was deliberately caused to occur by William Hoyt James, with the concurrence of the other respondents.

The bill asked the court to cancel and declare null and void the mortgage deed of October 11, 1958, and subsequent conveyances based upon this mortgage.

All of the respondents filed answers denying that Dorothy James was mentally incompetent at the time she executed the mortgage on October 11, 1958, or that any fraud had been practiced upon her.

By further answer all the respondents contended that Dorothy Ann James' name had been placed upon the original deed in 1952 by mistake and each respondent denied that Dorothy James ever had any interest in the property involved in this litigation. The respondents went on to ask the court to decree that both Dorothy James and the respondent Flossie James were holding an interest in the property as a resulting trust for the benefit of the respondents William Hoyt James and Robert D. James, respectively.

The case was tried to the Circuit Judge who entered a decree holding that Dorothy Ann James "does not have any title to or interest in the real estate which is the subject of this suit".

The complainant appealed. The final decree appealed from does not state the basis upon which the finding was made that the ward does not have any interest in the land, the subject of this litigation. As noted above, the contention of the respondents (appellees) was that she was not incompetent at the time the mortgage of October 11, 1958 was executed.

■■ The parties here are not in substantial disagreement as to the controlling law. It appears to be conceded that if Mrs.‌ James was incompetent on October 11, 1958, then the mortgage executed by her on that date is void. There is some disagreement it seems as to the burden of proof. The appellees contend, under the general rule, that the law presumes every person to be sane, that the burden of proving insanity on the day in question lies with the appellant. The appellees are correct in their general assumption that the law does presume every person to be sane and casts the burden of establishing insanity on the one asserting it.—Equitable Life Assurance Society of the United States v. Welch, 239 Ala. 453, 195 So. 554. However, it is equally true that where it is shown that a person has been afflicted with general and confirmed insanity for a period of time prior to the execution of the instrument under attack, then the person relying upon the instrument must prove the existence of a lucid interval at the time of the execution of that instrument.—Pike v. Pike, 104 Ala. 642, 16 So. 689. In the *Pike* case a bill was filed by the children of Rubin A. Pike to set aside a deed conveying lands which Pike had executed to his brother. It was the contention of the children that the grantor was insane at the time the deed was executed. In stating the rule Chief Justice Brickell said:

"The general proposition on which the bill is founded—that a court of equity, at the instance of the heirs of an insane grantor, will intervene, and vacate a deed conveying lands, which he may have executed while the insanity was existing—

has not been controverted. In such controversy, the general rule prevails, that the presumption is of sanity, and the burden of proving insanity rests upon the party alleging it. But, if insanity is not connected with or traceable to a cause in its nature temporary—general or confirmed insanity—be shown, the presumption is of its continuance; and the burden of removing the presumption devolves on the party affirming the validity of an act done after the time the insanity is shown to have existed. Johnson v. Armstrong, 97 Ala. 731, 12 So. 72; O'Donnell v. Rodiger, 76 Ala. 222; Saxon v. Whitaker's Ex'r, 30 Ala. 237; Rawdon v. Rawdon, 28 Ala. 565; Attorney General v. Parnther, 3 Brown, Ch. 441; Smith v. Tebbitt, L.R.1 Prob. & Div. 354; Hix v. Whittemore, 4 Metc. (Mass.) 545; Clark v. Fisher, 1 Paige (N.Y.) 171; Harden v. Hays, 9 Pa.S. 151; Turner v. Rusk, 53 Md. 65.

"The fact is fully proved, if it be not undisputed, that prior to the execution of the conveyance, the grantor was insane. The insanity did not originate from, nor was it connected with or traceable to, any temporary cause. He had not suffered from any violent disease, nor had he been the victim of any bodily injury, nor had he 'fallen into some frenzy, upon some accidental cause, which was afterwards taken away.'"

■ In the present case the fact was fully proven and undisputed that Dorothy James became afflicted with a serious mental disorder as early as 1954. She was confined to Bryce Hospital for several months at that time. Thereafter off and on from 1954 to 1958 she was repeatedly confined in a mental institution. In May of 1958, new commitment proceedings were had, consistent with the requirement at Bryce, and she was again committed to an insane hospital. The appellees contend that the burden was upon the appellant to prove that Mrs. James was insane at the time of the execution of the mortgage in October, 1958. We think it abundantly clear under the foregoing authority, that the burden of proving that Mrs. James was sane in the interval in which the mortgage was executed devolved upon those asserting the validity of that instrument.

■ We have carefully read the record with a view to determining whether or not there was any evidence supportive of this fact. We are mindful of the fact that in trying this case the chancellor was of the view that the burden of proving insanity was upon the complainant below. As indicated, this assumption is incorrect.

All of the witnesses in this case testified that Mrs. James had been mentally ill since 1954. The respondents and their witnesses testified that she had intervals in which she seemed to be capable of handling her affairs. We do not find evidence in this record sufficient to vitiate the presumption that she remained insane on the day of the execution of the mortgage involved. On the contrary, the evidence strongly supports the presumption that her insanity continued through 1958, and indeed, up until the time of the trial of this case, at which time she remained confined at Bryce Hospital.

Dr. Thomas Herbert Patton, Jr., a psychiatrist, who testified that he had been a licensed physician since 1942, and had been affiliated with Bryce Hospital since 1945, provided the following: That Mrs. James had been a patient at Bryce Hospital from May, 1954, off and on all through 1955, and that she was readmitted to the hospital in May, 1958. This doctor testified that when he first saw her in May of 1958, she was very withdrawn, confused, appeared depressed and was very careless in her personal appearance, with no insight and with very poor judgment. At that time she was diagnosed as schizophrenic reaction, catatonic type. He testified that she was acutely disturbed, confused and not mentally competent at that time. This doctor testified that in August, 1958, at the

request of Mrs. James' husband, respondent William Hoyt James, she was released, but her husband was advised that she should remain a while longer. He further testified that he advised Mrs. James' husband that she should not be taken out of the hospital at that time, August 23, 1958. Nevertheless, she was taken out and was not returned until October 16, 1958, five days after the mortgage was executed. At that time, the doctor testified, she was returned to the hospital in the custody of a deputy sheriff and the matron of the Baldwin County jail. And, according to the doctor, she was dirty, disheveled in appearance, withdrawn, tended to stay to herself, and had nothing to do with other people. It was this doctor's opinion that she was not mentally competent on October 16, 1958, and in his opinion she could not have been capable of handling her affairs on October 11, 1958. This doctor testified that in his opinion she was not mentally competent at the time she left the hospital on August 23, 1958, and remained incompetent until her return on October 16, 1958.

He further testified that in his opinion Mrs. James could not have been competent at any time during the period from May, 1958, through the date of his deposition, June, 1967.

The rule stated in Pike v. Pike, supra, is that where the validity of a conveyance is attacked on the ground of insanity, and general and confirmed insanity is shown before its execution, the burden is upon the party asserting the validity of the instrument, or those claiming under him, to show that at the time of the conveyance there was, in the mind of the grantor a lucid interval, and to meet this burden there must be clear, convincing evidence of the intermission of the insanity, and that the act proceeded from the unaided volition of the grantor. In our opinion, the respondents below, appellees here, have not carried this burden.

The evidence in support of their contention that this lady was in a lucid interval

on the day the mortgage was executed is anything but clear and convincing.

We believe that the trial court reached the conclusion that Mrs. James had no interest in the property involved in this case because of a misapprehension of the law with respect to the burden of proof. As indicated, we believe that this case is controlled by the authorities cited above. We can imagine no clearer case of a sustained, continuing, long-term period of mental illness preceding the execution of this mortgage than is shown by the facts in this case. We are unimpressed with the evidence, and there is little, to the effect that though Mrs. James was chronically and critically ill mentally, that nevertheless on October 11, 1958, she was lucid. The record of the evidence in this case will simply not support such a finding.

For the reasons above stated, the decree is reversed and the cause is remanded.

Reversed and remanded.

LIVINGSTON, C. J., and COLEMAN, BLOODWORTH, and McCALL, JJ., concur.