DESSER ET AL., GUARDIANS OF HONOR M. WOODS, INCOMPETENT *v.* WOODS ET UX.

[No. 40, September Term, 1972.]

*Decided November 10, 1972.*

The cause was argued before MURPHY, C. J., and BARNES, SINGLEY, SMITH and LEVINE, JJ.

*Bayard Z. Hochberg,* with whom were *Jacob Matz, Stanley H. Hellman* and *Levin, Hochberg & Chiarello* on the brief, for appellants.

*Ronald Willoner,* with whom were *DePaul & Willoner* on the brief, for appellees.

BARNES, J., delivered the opinion of the Court.

The Circuit Court for Prince George's County (Mc-Cullough, J.), on February 22, 1972, passed an order sustaining, without leave to amend, the demurrer of the appellees, Lawrence Woods and Mary Elizabeth Woods, his wife (defendants below), to the second amended bill of complaint of the appellants, Irwin H. Desser, a trust officer of the Department of Health and Mental Hygiene of the State of Maryland, and Thomas B. Yewell, guardians of Honor M. Woods, Incompetent. This action by the lower court was based upon that court's opinion that, on the face of the second amended bill of complaint, it appeared that the equity suit was barred by the three-year statute of limitations. The basis of the lower court's decision is the issue presented to us on appeal. We have concluded that the lower court erred and we will reverse the order of February 22, 1972, and remand the case for further proceedings.

It is well settled that when we consider an order sustaining a demurrer to a bill of complaint, without leave to amend, we assume, for the purposes of the ruling, the truth of all material and relevant facts that are well

pleaded in the bill of complaint and attached exhibits, as well as all inferences reasonably drawn from those well-pleaded facts. *Hall v. Barlow Corporation,* 255 Md. 28, 42, 255 A. 2d 873, 880 (1969), cited with approval and followed by us in *Thomas v. Howard County,* 261 Md. 422, 430, 276 A. 2d 49, 53 (1971). We shall accordingly set forth in some detail the allegations contained in the second amended bill of complaint.

It is alleged that following their appointment as guardians of Honor M. Woods, incompetent, on February 4, 1971, they obtained authority to file the second amended bill of complaint, the original bill of complaint having been filed pursuant to an order of court dated February 19, 1971. It is further alleged that on September 29, 1952, for a valuable consideration, Honor M. Woods and Mary Elizabeth Woods, one of the defendants, acquired approximately 172.302 acres of land, as tenants in common in fee simple, by a deed of the same date, and duly recorded among the land records of Prince George's County. A photostatic copy of this deed had been filed as "Plaintiff's Exhibit No. 1" with the original bill and was prayed to be taken as a part of the second amended bill of complaint.

Paragraphs 3, 4 and 5 alleged the following:

"3. That subsequent thereto, on May 6, 1960, based on the examinations of Dr. John Buell and Dr. Robert McCeney, it was their opinion that the said Honor M. Woods was insane and that she be placed in a hospital or institution in which the insane are detained for care and treatment.

"4. That as a result of the findings and opinions of Drs. Buell and McCeney, the said Honor M. Woods, on May 10, 1960, was ordered to be confined in Spring Grove State Hospital of the insane and was so admitted on May 11, 1960, a fact well known to the defendants.

"5. That prior to May 6, 1960, and subsequent

thereto until July, 1965, the Social Security Administration adjudicated the said Honor M. Woods as being 100% disabled and incompetent and incapable of handling her own affairs and accordingly issued payments based on said findings to a representative payee other than the said Honor M. Woods, a fact well known to the defendants."

It is then stated that the defendants "with full and complete knowledge of the mental and physical condition" of Honor M. Woods and realizing that there had been a "substantial and tremendous increase in the value of the 172.302 acres of land" acquired by Honor and Mary Elizabeth, as tenants in common, "through devious and nefarious means undertook a plan or scheme" to divest Honor of her interest in the land so that the defendants, Lawrence and Mary Elizabeth, would be its sole owners. In furtherance of the plan or scheme, on June 20, 1963, when Honor was on "convalescent leave" from Spring Grove State Hospital, the defendants transported her to a destination arranged in advance and without her prior knowledge, and then and there, "by means of coercion fraudulently caused her to execute a deed, without any valid consideration," conveying away her interest in the property "knowing full well that her mental condition was such that she was incompetent and incapable of comprehending her acts and the consequences thereof and that she was incompetent and incapable of executing a valid deed or contract." By virtue of the purported deed of June 20, 1963, Honor conveyed her interest in the land to a straw party who then conveyed the land back to Lawrence, "the older brother" of Honor, and to Mary Elizabeth, his wife, as tenants by the entireties, thus culminating the plan or scheme to divest Honor of her interest in the land and acquire that interest for themselves. The deed was duly recorded. It is alleged that it totally lacked consideration and that Honor "was incompetent on June 20, 1963 to execute a valid deed or contract, that she was incapable of com-

prehending her actions and the consequences thereof, and that she had lost her capacity to engage in responsible business transactions, a conclusion drawn by her treating physicians."

Paragraphs 12 and 13 allege:

"12. The plaintiffs further allege that when the said Honor M. Woods was granted convalescent leave from Spring Grove State Hospital on March 2, 1963, she was placed in the care of her father, Stephen Woods, who was about eighty-one years of age at that time, so that it became necessary for other members of the family, including the defendants, to render aid and assistance in handling the personal affairs and business matters of both the said Honor M. Woods and her father; that between March 2, 1963 and June 20, 1963, the defendants did actually manage and handle some of the personal and business affairs of Honor M. Woods and as a result thereof the said Honor M. Woods relied heavily on the defendants for their guidance and advice in the handling of her personal and business affairs and actually carried out their advice and suggestions, so that there was created a confidential relationship between Honor M. Woods and the defendants which relationship was in existence on June 20, 1963, the date the aforementioned deed was executed.

"13. That subsequent to the execution of the purported deed on June 20, 1963, the said Honor M. Woods was returned to Spring Grove State Hospital from convalescent leave on July 18, 1963, and continued therein as an in-patient until December 7, 1963, when she was again placed on convalescent leave under medication and subject to further out-patient treatment. That on March 12, 1966, the said Honor M. Woods was readmitted for a second time to Spring Grove

State Hospital on the basis of two medical cer-
tificates and on December 17, 1967 she was
again placed on convalescent leave under medi-
cation and subject to further out-patient treat-
ment. On May 28, 1970, she was again read-
mitted and as of the filing of the original Bill
of Complaint was still a patient at Spring
Grove State Hospital."

It is then stated that condemnation proceedings had
been instituted by Prince George's County against Law-
rence and Mary Elizabeth, as well as the Washington
Suburban Sanitary Commission, in regard to the sub-
ject property, which proceedings had been settled by
Lawrence and Mary Elizabeth for $570,000. It was
agreed between the guardians of Honor and the defen-
dants that, after deducting legal fees and other expenses,
the balance of the $570,000 was divided into two equal
parts, one disbursed to Lawrence and Mary Elizabeth,
the other equal part retained by counsel for them in trust
pending the outcome of the present litigation.

There were eleven prayers for relief, *i.e.*, that the
lower court decree that:

1. The deed of June 20, 1963, be declared null
and void.

2. When the deed of June 20, 1963, was ex-
ecuted, Honor was incompetent and incapable of
executing a valid deed or contract.

3. A confidential relationship was created be-
tween Honor and the defendants and existed
when the deed of June 20, 1963, was executed.

4. The act of the defendants in acquiring ab-
solute ownership of the land on June 20, 1963,
"was in violation of said confidential relation-
ship."

5. Honor was coerced by the defendants to
sign and execute the deed.

6. Honor was fraudulently induced by the de-

fendants to sign and execute the deed without any valid consideration.

7. The defendants exercised undue influence on Honor to obtain her signature to the deed.

8. The lower court impress a trust on the net one-half of the condemnation proceeds.

9. A trustee be appointed to administer Honor's estate.

10. Pending the litigation the funds are to be retained by counsel for the defendants in accordance with the agreement of February 26, 1971.

11. The plaintiffs have other and further appropriate relief.

On January 11, 1972, the defendants filed their demurrer to the second amended bill of complaint and stated as one of the grounds:

"That the statute of limitations and laches apply where suit is brought eight (8) years after the alleged cause of action in the absence of any excuse for the delay in bringing the suit."

As we have indicated, the chancellor was of the opinion that the suit was barred by the three-year statute of limitations, Maryland Code (1957, 1972 Repl. Vol.) Art. 57, § 1, stating:

"The initiation of this action of April 20, 1971, was barred by the Statute of Limitations. That being the case, it is unnecessary to reach the Defendants' other contentions."

It is well settled that the defenses of the bar of the statute of limitations and of laches may only be availed of by demurrer to a bill of complaint when they appear on the face of the bill of complaint, itself, and other matters not so appearing cannot be considered in determining whether or not these defenses are a bar to the alleged cause of action. When the time involved is less

than the period of the statute of limitations involved, the equity courts will not sustain the defense of laches raised by demurrer unless it appears on the face of the bill of complaint that the defendant has been prejudiced by an unreasonable delay in the assertion of the plaintiff's rights. *Hall v. Barlow Corporation, supra,* 255 Md. at 42, 255 A. 2d at 879-80. The appellees do not contend that there are any allegations in the bill of complaint showing prejudice to them by the delay in assertion of Honor's alleged rights so that their contention in the present case is directed at the bar of the three-year statute of limitations.

As we stated in *Hall,* the equity courts will follow, by analogy, the period of limitations applicable to actions at law (255 Md. at 41-42, 255 A. 2d at 879). This rule also applies where the remedies at law and in equity are concurrent, as they are in the present case. *Rettaliata v. Sullivan,* 208 Md. 617, 621, 119 A. 2d 420, 422 (1956). Inasmuch as some eight years elapsed between the execution by Honor of the purported deed and the filing of suit by her guardians—and this appears on the face of the bill of complaint—Honor's guardians must show from the allegations of fact in the bill and reasonable inferences drawn from such allegations that the bar of the three-year period of limitations was tolled or was otherwise inapplicable to bar Honor's alleged cause of action.

As we analyze the well-pleaded allegations and reasonable inferences to be drawn from them, the guardians of Honor have two strings to their bow, as it were, to establish this. One "string" is the contention that the well-pleaded facts and the reasonable inferences mount up to a showing, for the purposes of the challenge by demurrer, that Honor was *non compos* or insane during the entire period from May 1960, when she was first admitted to the Spring Grove State Hospital, until suit was filed by her guardians on April 20, 1971. This period includes, of course, June 20, 1963, when the deed was purportedly executed by Honor, so that the statute of lim-

itations is no bar by virtue of Art. 57, § 2, which provides:

"If any person entitled to any of the actions mentioned in § 1 shall be at the time such cause of action accrues within the age of one and twenty years or non compos, he or she shall be at liberty to bring the said action within the respective times so limited after the disability is removed, as other persons having no such disability might or should have done."

The other "string" is the contention that the bill of complaint alleges facts indicating that a confidential relationship existed between Honor, on the one hand, and her brother Lawrence and her sister-in-law Mary Elizabeth, on the other, beginning March 2, 1963, and allegedly existing on June 20, 1963, when the deed was allegedly executed. This confidential relationship, in view of the allegations of fact and reasonable inferences, continued to exist until the appointment of the guardians on February 4, 1971, so that the period of limitations was tolled during that time by virtue of Art. 57, § 14, which provides:

"In all actions where a party has a cause of action of which he has been kept in ignorance by the fraud of the adverse party, the right to bring suit shall be deemed to have first accrued at the time at which such fraud shall or with usual or ordinary diligence might have been known or discovered."

The chancellor principally considered the first contention in his opinion, but necessarily decided the second contention adversely to the appellants by sustaining the demurrer to the whole bill of complaint without leave to amend. We shall now consider these two contentions of the appellants in the order indicated.

## (1)

As we have seen, the bill of complaint alleged that on May 6, 1960, Honor was examined by two physicians who were of the opinion that she was insane and should be placed in a hospital or institution in which the insane are detained for care and treatment. As a result of the findings and opinions of the two physicians, Honor, on May 10, 1960, "was ordered to be confined in Spring Grove State Hospital of the insane and was so admitted on May 11, 1960." This was well known to the defendants. The Social Security Administration also found that Honor was 100% disabled and incompetent and incapable of handling her own affairs prior to May 6, 1960, and until July 1965, which fact the defendants well knew. The allegations in regard to her mental incapacity to execute a valid deed or contract at the time of executing the purported deed without consideration have already been stated and need not be repeated. It was then alleged that from March 2, 1963, to July 18, 1963, Honor was "granted convalescent leave" from Spring Grove State Hospital, was placed in the care of her 81 year old father, and that it was necessary for other members of her family, including the defendants, to handle the personal affairs and business matters of both Honor and her father. Then follow the allegations that Honor relied upon the defendants for guidance and advice and that she carried out their advice and suggestions such that a confidential relationship was created which existed when the deed was executed.

Then follow the allegations in regard to Honor's return to the hospital on July 18, 1963, and her remaining there until December 7, 1963, when "she was again placed on convalescent leave under medication and subject to further out-patient treatment." She was readmitted to the hospital on March 12, 1966, and again placed on "convalescent leave under medication and subject to further out-patient treatment" on December 17, 1967. Again on May 28, 1970, she was readmitted to the hos-

pital and was still a patient there when the original bill of complaint was filed.

Although it is not *specifically alleged* that Honor was insane for the entire period from May 6, 1960, to the time when the original bill of complaint was filed on April 20, 1971, it is also not alleged that she was lucid at any time during that period. It having been alleged that she was insane when examined by the two physicians on May 6, 1960, and ordered "confined in Spring Grove State Hospital of the insane" on May 10, 1960, and actually admitted there the following day, the presumption of sanity is rebutted by these allegations. The burden of showing a return to sanity or at least the occurrence of lucid intervals, then rests upon the party relying upon such a contention. *Dreyer v. Welch,* 136 Md. 219, 225, 110 A. 476, 478 (1920). See *Bergin v. State,* 1 Md. App. 74, 227 A. 2d 357 (1967). *See also Willis v. James,* 284 Ala. 673, 227 So. 2d 573 (1969) ; *Martin v. Martin,* 270 A. 2d 141 (D.C. App. 1970) ; *English v. Shivers,* 219 Ga. 515, 133 S.E.2d 867 (1963).

The recurring allegations in regard to "convalescent leave" and "convalescent leave under medication and subject to further outpatient treatment," in our opinion, *reasonably imply* that Honor was not cured of her insanity and was not lucid during those intervals of convalescent leave. Inasmuch as we give the pleader the benefit of well-pleaded facts and reasonable inferences drawn from those facts for the purposes of the sufficiency of a bill of complaint challenged by demurrer, we conclude that the three-year period of the statute of limitations was tolled in accordance with the provisions of Art. 57, § 2, already set out in full. Accordingly, it was error for the chancellor to have sustained the demurrer on the basis of a bar of the action by the statute of limitations. The defendants upon the remand of the case for further proceedings may claim, if the facts justify it, that Honor was cured of her insanity or had lucid intervals and assert the defense of limitations in their answer or other pleadings, if such a defense is available

under the applicable law. We do not, of course, express any opinion upon this possible defense.

### (2)

We now turn to a consideration of the sufficiency of the allegations of fact and reasonable inferences from such facts relating to the confidential relationship set forth in paragraph 12 of the second amended bill of complaint. The allegations of that paragraph are, in our opinion, sufficient to indicate the existence of such a relationship between Honor and the defendants prior to and at the time of the execution of the purported deed, without consideration, on June 20, 1963. The necessity for assistance in handling Honor's personal affairs and business matters is alleged while she was on convalescent leave in the care of her 81 year old father, and the assumption of this responsibility by Honor's brother, Lawrence, and his wife, Mary Elizabeth, and the "heavy" reliance of Honor upon their advice and guidance in handling her personal and business affairs and the actual carrying out of their advice and suggestions. Under the prior decisions of this Court, the mental difficulties and instability of Honor, even if it be assumed *arguendo* that she was not insane at the time of the execution of the deed, her reliance upon her brother and sister-in-law for guidance and advice, the actual handling by the defendants of some of her personal and business affairs, and the carrying out by Honor of their advice and suggestions are facts sufficient to indicate, *prima facie,* the existence of a confidential relationship between Honor and the defendants. *See Owings v. Owings,* 233 Md. 357, 196 A. 2d 908 (1964) ; *Hoffman v. Rickell,* 191 Md. 591, 62 A. 2d 597 (1948) ; *Upman v. Thomey,* 145 Md. 347, 125 A. 860 (1924). *See also McMurray v. Mc-Murray,* 410 S.W.2d 139 (Ky. 1966) *citing Lemaster v. Caudill,* 328 S.W.2d 276 (Ky. 1959) *with approval;* 15A C.J.S. *Confidential,* at 356 (1967).

When a confidential relationship is established, the burden is then upon the trusted party to show that the

challenged transaction was freely, fairly made and that no unfair or unreasonable advantage was taken of the confiding party in the confidential relationship. *Owings v. Owings, supra; Upman v. Thomey, supra;* 26A C.J.S. *Deeds* § 193, at 53 (1956).

Nor is the confiding party under any duty to make inquiry to discover that the confidential relationship has been abused during the continuation of that relationship. *See James F. Herring v. Worth W. Offutt,* 266 Md. 593, 295 A. 2d 876 (1972) and cases cited therein. *See also Scoville v. Brock,* 76 Vt. 385, 57 A. 967 (1904) ; 54 C.J.S. *Limitations of Actions* §§ 194, 198 *et seq.* (1948).

If the confiding party, however, has actual knowledge during the existence of the confidential relationship that the confidential relationship has been abused, or is in possession of facts which put such a party upon inquiry which would disclose such an abuse, then the applicable statute of limitations begins to run at the time of receiving actual knowledge or of facts placing the confiding party upon inquiry; but the burden is upon the trusted party to prove such earlier knowledge. *Grayson v. Fidelity Life Ins. Co.,* 114 S. C. 130, 103 S. E. 477 (1920) ; 54 C.J.S. *Limitations of Actions* § 388, at 528 (1948).

There are no allegations in the second amended bill of complaint to indicate any termination of the existing confidential relationship and, indeed, the reasonable inference from the allegations in paragraph 13 of Honor's return to Spring Grove State Hospital some 28 days after the execution of the deed on June 20, 1963, and her subsequent convalescent leaves under medication and her final readmission on May 28, 1970, is that the confidential relationship continued until the time of filing suit by Honor's guardians. Under the circumstances alleged, Honor would, *prima facie,* have had no opportunity to investigate the alleged abuse of the confidential relationship and the facts surrounding such abuse are such as would naturally conceal themselves while the confidential relationship existed. *See Brack v. Evans,* 230 Md. 548,

187 A. 2d 880 (1963). *Cf. Waldman v. Rohrbaugh,* 241 Md. 137, 215 A. 2d 825 (1966). In short, the alleged fraud of the defendants and their alleged breach of the existing confidential relationship in effect conceals itself. *See Citizens Bank v. Leffler,* 228 Md. 262, 179 A. 2d 686 (1962). In our opinion, the allegations and reasonable inferences bring the alleged confidential relationship within the provisions of Art. 57, § 14 and hence this possible ground for relief is not, on the face of the second amended bill of complaint, barred by the statute of limitations.

Again, the defendants may in their answer or other pleadings allege, if the facts justify it, that the confidential relationship terminated more than three years prior to the filing of suit or that Honor was placed upon inquiry of the alleged breach of the confidential relationship three years prior to the filing of suit; but the burden is upon them to allege—and ultimately to prove— these matters in defense. On the face of the second amended bill of complaint, the allegations and reasonable inferences are sufficient to come within the provisions of Art. 57, § 14 so that the three-year period of limitations is, *prima facie,* not a bar to Honor's claim of a breach of the confidential relationship. For this additional reason, the chancellor erred in sustaining the demurrer to the second amended bill of complaint.

> *Order of February 22, 1972, reversed and case remanded to afford the appellees, defendants below, the opportunity to file an answer or other appropriate pleadings within 20 days after the issuance of the mandate in this case and for further proceedings thereafter in regular course, the costs to be paid by the appellees.*