749 P.2d 77

**HEIGHTS REALTY, LTD., a New Mexico corporation, et al., Plaintiffs–Appellants,**

v.

**E.A. PHILLIPS, Conservator for the Estate of Johnye Mary Gholson, an incapacitated adult, Defendant–Appellee.**

No. 17034.

Supreme Court of New Mexico.

Jan. 26, 1988.

Turner W. Branch, Margaret Moses Branch, Albuquerque, for plaintiffs-appellants.

Coors & Ginsburg, Ronald Ginsburg, Albuquerque, for defendant-appellee.

## OPINION

STOWERS, Justice.

This case involves an exclusive listing contract between plaintiff-appellant, Heights Realty, Ltd. (Heights Realty), and Johnye Mary Gholson (Mrs. Gholson), the original named defendant. Heights Realty filed an amended complaint seeking its

commission for having performed under the terms of the contract by having provided a buyer to purchase Mrs. Gholson's property. During the pendency of this action, Mrs. Gholson was adjudicated incompetent and E.A. Phillips (Phillips), the present defendant-appellee, was appointed conservator of her estate. Following a bench trial, the district court found Mrs. Gholson lacked the mental capacity to have validly executed the listing contract and entered judgment in favor of Phillips. On appeal, Heights Realty argues that the presumption of competency was not overcome by clear and convincing evidence. We disagree and affirm the judgment of the district court.

In 1984, Mrs. Gholson was interested in selling her North Valley property. She telephoned Heights Realty and spoke with Pat Eichenberg, a real estate broker and owner of Heights Realty and also an acquaintance of hers, who brought Mrs. Gholson an exclusive listing agreement. Mrs. Gholson was approximately eighty-four years old when she signed the contract on September 26, 1984, listing the property for one year in the amount of $250,000 with a cash down payment of $75,000. No other terms were included in the agreement. Subsequently, Mrs. Gholson changed her mind about the amount of the down payment and on October 10, 1984, signed an addendum increasing it to $100,000. In November 1984 an offer was made to purchase the property for $255,000. Mrs. Gholson did not accept that offer.

The question to be determined is whether substantial evidence was presented from which the trial court could properly conclude that the presumption of competency was overcome by clear and convincing evidence.

On appeal, this court reviews the record to determine whether there is substantial evidence to support the trial court's findings of fact. *State ex rel. Goodmans Office Furnishings, Inc. v. Page & Wirtz Constr. Co.*, 102 N.M. 22, 24, 690 P.2d 1016, 1018 (1984). If such substantial evidence appears in the record, we will not disturb those findings. *Phelps Dodge*

*Corp. v. New Mexico Employment Sec. Dept.*, 100 N.M. 246, 247, 669 P.2d 255, 256 (1983).

The test of mental capacity is whether a person is capable of understanding in a reasonable manner the nature and effect of the act in which the person is engaged. *In re Estate of Head*, 94 N.M. 656, 659, 615 P.2d 271, 274 (Ct.App.), *cert. denied sub nom. Taute v. Poppe*, 94 N.M. 675, 615 P.2d 992 (1980). The law presumes that every person is competent. To show the contrary, the burden of proof rests on the person asserting lack of capacity to establish the same by clear and convincing proof. *Roybal v. Morris*, 100 N.M. 305, 309, 669 P.2d 1100, 1104 (Ct.App.1983); *In re Estate of Taggart*, 95 N.M. 117, 120, 619 P.2d 562, 565 (Ct.App.1980); *Estate of Head*, 94 N.M. at 659, 615 P.2d at 274. The burden remains on those alleging incompetency unless the case is brought within the exception in which previous incompetency is admitted or sufficiently shown and thus changes that burden. If incompetency of a general permanent nature has been shown to once exist for a period of time prior to the execution of the instrument under attack, it is presumed to continue until there is a showing by the person relying on the validity of that instrument that proves the existence of a lucid interval at the time of its execution. *Willis v. James*, 284 Ala. 673, 676–77, 227 So.2d 573, 576–77 (1969); *In re Peter's Estate*, 43 Wash.2d 846, 862, 264 P.2d 1109, 1118 (1953); *In re Ingram's Estate*, 384 P.2d 1020, 1021 (Wyo.1963).

Although the test of mental capacity is applied as of the date that the attacked instrument is executed, evidence of a person's prior or subsequent condition is admissible to show the condition at the time in issue. *Harrison v. City Nat'l Bank of Clinton, Iowa*, 210 F.Supp. 362, 371 (S.D.Iowa 1962). The combined weight of all the evidence in each case determines the result. The court is entitled to take into consideration the individual's physical condition; the adequacy of consideration; whether or not the transaction was improvident; the relation of trust and confidence between the parties to the transaction and

the weakness of the mind of the alleged incompetent person as judged by all other acts within a reasonable time prior and subsequent to the act in question. *Harrison*, 210 F.Supp. at 371; *see also Turner v. Cole*, 116 N.J.Eq. 368, 380, 173 A. 613, 619 (Ch.1934). *Cf. In re Meyers*, 410 Pa. 455, 476–77, 189 A.2d 852, 862 (1963) (the testimony of those who observed the speech and conduct of the person on the date the instrument is executed outranks the testimony as to observations made prior to and subsequent to that date).

■ Only Mrs. Eichenberg and Mrs. Gholson were present at the time of the signing of the exclusive listing agreement on September 26, 1984, and its addendum on October 10, 1984. Mrs. Eichenberg testified that Mrs. Gholson was "just as sharp as a tack" when the agreement was executed. She further testified that on the date the addendum was signed, Mrs. Eichenberg read the contents of it to Mrs. Gholson who had been lying down on the couch because she had injured her foot and that Mrs. Gholson appeared to have no problems understanding the addendum since she even corrected a misspelling in her name.

Testimony was presented that Mrs. Gholson owned approximately twelve acres with a residence in Albuquerque's North Valley at the time she decided to sell the property for financial reasons. Mrs. Gholson stated that she set the asking price of $250,000 by guessing at the value of the property and left open all other terms vital to the contract. Mrs. Gholson also testified that she had no recollection of signing the addendum because she "couldn't think of anything in sequence at that time." Evidence showed that no family or lawyer assisted her in executing the agreements. It appears from the record that the trial court discounted Mrs. Eichenberg's testimony.

Additional testimony as to Mrs. Gholson's mental capacity was elicited from her son-in-law, Phillips, and granddaughter, Louise Loomis, both of whom had for many years observed Mrs. Gholson's speech and conduct. Phillips testified that he first noticed behavior evidencing her general mental decline in 1959, after the death of her husband. He recounted a number of incidents: for example, beginning in May 1983, Mrs. Gholson began to mismanage the payment of her bills, confusing credit with debit balances; she set off her burglar alarm and left it running; she locked herself out of her automobile while the engine was still on; and she failed to recall the death of her younger brother, with whom she had been extremely close, on September 19, 1984. Phillips characterized her as being constantly confused.

Louise Loomis testified that she always maintained a close and intimate relationship with her grandmother. She described the degeneration of Mrs. Gholson's mind over a period of years. In particular, she stated that around 1979 or 1980, her grandmother began to have problems comprehending matters. Mrs. Loomis testified that by the summer of 1984 on a trip to Utah, her grandmother was unable to communicate with people or dial a telephone number for room service and that shortly thereafter, Mrs. Gholson could not carry on her personal affairs nor make appointments with the hairdresser. She also developed erratic eating habits and was incapable of dealing with restaurant bills. Continuing, Mrs. Loomis testified that her grandmother became much more confused after she broke her foot in September of 1984. She opined that her grandmother did not have the mental capacity to understand a listing agreement.

Two psychiatrists testified, Dr. Farber for Heights Realty, and Dr. Muldawer on behalf of Mrs. Gholson. Dr. Farber neither met with nor examined Mrs. Gholson and only reviewed documents about her. Dr. Farber indicated that primarily he relied on Dr. Muldawer's handwritten notes and his deposition. Dr. Farber averred that he neither had sufficient evidence nor had he made a timely examination of her to enable him to say that she was incompetent, and therefore the presumption of competency had to prevail.

Dr. Muldawer testified that he examined Mrs. Gholson on January 11, 1985, reviewed relevant documents, and thereafter

conferred with her relatives. He found that Mrs. Gholson showed a general decline in her cognitive skills about 1979 or 1980 involving her judgment, reasoning and memory. He further stated that this decline was slow and subtle and was evidenced by increasing forgetfulness and the general inability to take care of her own needs. He concluded that when she signed the listing agreement "she certainly didn't fully understand the terms" even though "in a broader sense she knew she was disposing of property." He then stated he could not use the word "conclusively" to describe Mrs. Gholson's lack of contractual capacity on September 26, 1984, but he could state that she was incompetent on that date within "reasonable medical probability."

A review of the trial record indicates, as properly found by the court below, that "on September 26, 1984 and thereafter Mrs. Gholson was suffering from a progressive, deteriorating mental disease which prevented her from understanding the nature and consequences of the * * * agreement and the Addendum thereto"; and that "on September 26, 1984 and thereafter, Mrs. Gholson was without lucid intervals."

There was a conflict in the general medical testimony adduced from Dr. Muldawer, who observed Mrs. Gholson, and Dr. Farber, who never observed her but relied on observations of another party. This type of medical testimony therefore, in and of itself, is not sufficient to overcome the presumption of competency. *See In re Estate of Head,* 94 N.M. at 659, 615 P.2d at 273; *see also In re Estate of Taggart,* 95 N.M. at 120, 619 P.2d at 565. The opinions expressed by Phillips and Mrs. Loomis were predicated on their many experiences with Mrs. Gholson tending to afford them opportunities to observe her mental capacity. Thus, there was substantial evidence presented from those who were in a position to observe Mrs. Gholson's conduct before and after the day the instrument in question was executed.

Even though some of the evidence adduced was conflicting, this goes to the question of credibility, a question solely for resolution by the trier of fact, who after hearing the testimony resolved the question in favor of Mrs. Gholson. This court will not resolve conflicts or substitute its judgment where the record as a whole substantially supports the trial court's findings of fact. *Sternloff v. Hughes,* 91 N.M. 604, 608, 577 P.2d 1250, 1254 (1978). The fact that there may have been some evidence upon which the court might have found facts other than what it did is not sufficient for reversal. *Dibble v. Garcia,* 98 N.M. 21, 25, 644 P.2d 535, 539 (Ct.App.), *cert. denied,* 98 N.M. 50, 644 P.2d 1039 (1982).

Although the trial court did not specifically state in its findings that the presumption of competency was overcome by clear and convincing evidence, it is implicit in those findings when the evidence is viewed in its entirety that this burden of proof had been sustained. We hold that substantial evidence was presented from which the trial court could properly conclude that the presumption of competency was overcome by clear and convincing evidence; consequently, Mrs. Gholson lacked mental capacity to enter into the exclusive listing agreement and its addendum. The judgment of the district court is affirmed.

IT IS SO ORDERED.

DAN SOSA, JR., Senior Justice, concurs.

WALTERS, J., concurs in result only.