This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-41958**

**MARK RICHARDS,**

Petitioner-Appellee,

v.

**CATHERINE RICHARDS,**

Respondent-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Elaine P. Lujan, District Court Judge**

Robert D. Lohbeck
Sandia Park, NM

for Appellee

Catherine Richards
Albuquerque, NM

Pro Se Appellant

## MEMORANDUM OPINION

**WRAY, Judge.**

**{1}** Respondent appeals from the district court's final decree for dissolution of marriage and the denial of her post-judgment motions. We issued a calendar notice proposing to affirm. Respondent has filed a memorandum in opposition, which we have duly considered. Unpersuaded, we affirm.

**Bias by the District Court**

**{2}** First, Respondent continues to argue that the district court allowed bias in the settlement facilitation process wherein the parties reached a full settlement,

documented in the Memorandum of Agreement (Agreement). Specifically, Respondent argues that the district court accepted an affidavit by the settlement facilitator, which was a breach of confidentiality in the settlement process. [MIO 2] Respondent asserts that the affidavit only supports one party and that the facilitator was willing to testify about aspects of the settlement facilitation that she believes should have been confidential. [MIO 2] In our calendar notice, we proposed that the district court did not err by accepting the settlement facilitator's affidavit because the affidavit did not contain communications—confidential or otherwise, but rather the settlement facilitator's observations of the parties and information on how the settlement facilitation was conducted. *See* NMSA 1978, § 44-7B-4 (2007) ("Except as otherwise provided in the Mediation Procedures Act . . . or by applicable judicial court rules, all mediation communications are confidential, and not subject to disclosure and shall not be used as evidence in any proceeding."). [CN 4] Although Respondent asserts that the settlement facilitator "could not possibly have known that Resp[ondent] was being economically coerced and under undue influence from either Pet[itioner] and/or the [c]ourt" [MIO 3], Respondent does not demonstrate that the settlement facilitator's statements in the affidavit were confidential. Moreover, Respondent has not provided any additional facts, evidence, or any New Mexico authority that demonstrates that the statements in the affidavit regarding the facilitator's observations about the parties' participation in the mediation and how the settlement facilitation was conducted were improper such that the district court erred in accepting the affidavit. *See State v. Mondragon*, 1988-NMCA-027, ¶ 10, 107 N.M. 421, 759 P.2d 1003, *superseded by statute on other grounds as stated in State v. Harris*, 2013-NMCA-031, ¶ 3, 297 P.3d 374; *see Hennessy v. Duryea*, 1998-NMCA-036, ¶ 24, 124 N.M. 754, 955 P.2d 683 ("Our courts have repeatedly held that, in summary calendar cases, the burden is on the party opposing the proposed disposition to clearly point out errors in fact or law.").

**{3}**     Second, Respondent also continues to argue that the district court erred by "having [s]pecial [m]asters, [m]ediators and [e]xpert [w]itnesses paid by only one of the [p]arties as it give[s] rise to the perception of []partiality and a conflict of interest," and that the district court's rulings were motivated by bias. [MIO 18] In our calendar notice, we proposed to affirm on the basis that Respondent had not provided us with any information about when and why she objected to one party paying the fee for the special master or the district court's reasoning in overruling those objections. [CN 9] We further noted that Respondent did not explain how she was prejudiced by the use of a special master or expert witness. [CN 9-10] Although Respondent has attempted to clarify her argument and provide more explanation, we are unpersuaded. Respondent indicates that these issues were preserved when Petitioner made what Respondent believed to be unwarranted requests and the district court granted them. [MIO 28-29] No portion of the record proper cited by Respondent[1] indicates that Respondent objected to the district court's order that Petitioner pay the fees of the appointed individuals or otherwise brought to the district court's attention the concern that the arrangements for payment resulted in biased recommendations. Respondent also asserts that "bias was

---

[1]Respondent submitted a document titled, "Notice of Omission," in which Respondent made corrections and additions to her previous statements of preservation in her MIO. [Notice of Omission, filed 1/8/2025] We have reviewed this Notice and accounted for these additional citations to the record.

the reason" for the district court failing to rule in her favor on her motion to modify support when she had a change of circumstances, while granting Petitioner's motion to sell the marital home. However, this assertion does not demonstrate bias by the district court. [MIO 18] *See United Nuclear Corp. v. Gen. Atomic Co.*, 1980-NMSC-094, ¶ 425, 96 N.M. 155, 629 P.2d 231 ("Rulings adverse to a party do not necessarily evince a personal bias or prejudice on the part of the judge against it even if the rulings are later found to have been legally incorrect."). Accordingly, we conclude that the district court did not err on this issue. *See Hennessy*, 1998-NMCA-036, ¶ 24.

## Allocation of Money for Attorney Fees

**{4}** Next, Respondent continues to assert that the district court erred by not granting her adequate community funds to cover legal expenses. [MIO 4] We proposed to affirm the district court on the basis that Respondent had not provided enough information on how she raised this issue or the district court's reasons for denying her request. [CN 5] We also explained that Respondent did not cite to the record proper to support the alleged disparity in the amount of money allocated for legal expenses to herself and Petitioner. [CN 5] In her MIO, Respondent (1) provided more information about her requests for more money for her legal expenses by referencing individual motions that requested additional attorney fees for the instant motions and pointing to district court orders that reference attorney fees; [MIO 4] (2) argued that the disparity in community funds available to pay attorney fees is established by the amounts the district court ordered to be paid in relation to the parties' references to fees in the Agreement and statements by the district court about the total amounts expended; [MIO 5] and (3) contends that because she could not continuously pay for representation, Petitioner had the advantage of continuous representation. [MIO 5] We remain unpersuaded. Respondent's requests for attorney fees were largely made in the context of a particular motion or response—Respondent requested fees to handle particular motions, as did Petitioner. [*See, e.g.*, RP 19, 50, 82, 84, 105, 156, 202, 214, 220, 225, 245, 248-50, 283, 335, 367, 384, 399, 441, 515, 535, 595] When Respondent twice raised the matter of disparity of funds to pay for representation, the district court ordered amounts to be advanced to Respondent. [RP 93-94, 138, 445, 467-470, 473-77, 544-47] Respondent has not cited to any specific motion in the record proper to show that the district court denied such a motion or failed, when the matter was raised, to recognize any disparity in the amount of money for legal expenses allocated to each party. *See Mondragon*, 1988-NMCA-027, ¶ 10; *Hennessy*, 1998-NMCA-036, ¶ 24.

## Formation of the Agreement

**{5}** Respondent challenges our proposed disposition that the Agreement was not made under coercion, that the Agreement was not the result of misrepresentation, that she did not lack capacity to enter into the Agreement, or that the Agreement was not unconscionable. [MIO 6-18] Our calendar notice proposed to affirm on the basis that Respondent had not provided facts sufficient to demonstrate that the district court had erred by adopting the Agreement because the district court is in the best position to resolve questions of fact and to evaluate the credibility of the witnesses. [CN 9]

**{6}** In her memorandum in opposition, Respondent makes many of the same arguments that she raised in her docketing statement. First, she argues that she was coerced into signing the Agreement because Petitioner threatened to stop paying for her caregiver, and followed through on his threat. [MIO 6] In addition, she argues the district court's threat to sell the marital home if the parties failed to reach an agreement forced her to enter into the Agreement despite the fact that she could not comprehend or understand it. [MIO 6] We review the district court's determination on duress for substantial evidence. *See First Nat'l Bank in Albuquerque v. Sanchez*, 1991-NMSC-065, ¶ 11, 112 N.M. 317, 815 P.2d 613 (considering whether substantial evidence supported a claim for duress). The district court found that the evidence from the settlement facilitator contradicted Respondent's evidence that she was under duress or coerced to sign the Agreement, that Petitioner did not abuse his stronger economic position, and that "frustration by the [c]ourt with the progress of the case does not amount to coercion to enter into a settlement agreement." [RP 656-57] Respondent's arguments to the contrary ask this Court to redetermine credibility or reweigh the evidence, which is a role we do not perform. *See Kennedy v. Dexter Consol. Schs.*, 2000-NMSC-025, ¶ 21, 129 N.M. 436, 10 P.3d 115 ("A reviewing court may not reweigh evidence or substitute its judgment for that of the factfinder.").

**{7}** Second, Respondent asserts that Petitioner failed to comply with discovery requests and withheld information regarding the parties' assets. [MIO 8] She contends that although she received a lump sum from the Agreement, her spousal support was considerably decreased such that she is unable to live comfortably or save any money. [MIO 9] This outcome, Respondent maintains, was due to Petitioner's "non[]disclosure and dissipation of assets during the pendency of the case," which Respondent argues resulted in "an extremely inequitable division of the [p]arties' property and income." [MIO 9] Respondent cannot, however, dispute that, prior to her acceptance of the Agreement, Respondent maintained that Petitioner had failed to comply with discovery requests and withheld information about assets. [RP 442-44, 467-471] Respondent signed the Agreement anyway. Because Respondent's view that Petitioner had not been forthcoming with information predated the Agreement, we cannot conclude that the district court erred by declining to excuse Respondent's performance of the Agreement on that basis.

**{8}** Third, Respondent continues to assert that she lacked capacity to enter into the Agreement, and as such, the Agreement should be considered invalid or void. [MIO 11] Respondent repeats the same reasoning for her lack of capacity as she did in her docketing statement—that she had COVID, was suffering from her chronic condition with multiple sclerosis, was taking flu medicine, had eaten no food, and had had almost no sleep the night before. [MIO 11-12] In addition, Respondent again challenges the district court's findings that the affidavits she submitted to support her incapacity were insufficient. Specifically, she "respectfully disagrees that the affidavits from her licensed [m]edical [p]roviders failed to meet the burden that she was mentally incapacitated to contract on the day of the [f]acilitation." [MIO 12] Neither affiant observed Respondent on the day of the negotiations and both generally provided opinions about their knowledge of Respondent's conditions and understanding of the information that she

reported to them. [RP 613 ¶ 4, 617-620] The district court considered the affidavits and determined that the affiants appeared to be advocates who did not offer medical opinions that on the day of the settlement negotiations, Respondent could not understand the Agreement. [RP 659-61] *See Heights Realty, Ltd. v. Phillips*, 1988-NMSc-007, ¶ 6, 106 N.M. 692, 749 P.2d 77 ("The test of mental capacity is whether a person is capable of understanding in a reasonable manner the nature and effect of the act in which the person is engaged."). The district court weighed the evidence presented, evaluated credibility, and concluded Respondent did not carry the burden to establish lack of capacity. *See id.* ("[T]he burden of proof rests on the person asserting lack of capacity to establish the same by clear and convincing proof."); *see also id.* ¶ 15. We therefore discern no reversible error. *Id.* ¶ 15 ("The fact that there may have been some evidence upon which the court might have found facts other than what it did is not sufficient for reversal.").

**{9}** Finally, Respondent continues to assert that the Agreement was both substantively and procedurally unconscionable because the sale of her home was "abusive" and because the Agreement contained contradicting and impossible terms for her to perform. [MIO 13] We proposed to affirm the district court on this issue on the basis that Respondent had not provided sufficient facts to demonstrate that the Agreement was either procedurally or substantially unconscionable. [CN 8-9] *See Cordova v. World Fin. Corp. of N.M.*, 2009-NMSC-021, ¶¶ 23-23, 146 N.M. 256, 208 P.3d 901 (explaining that procedural unconscionability "examines the particular factual circumstances surrounding the formation of the contract" and substantive unconscionability "concerns the legality and fairness of the contract terms themselves"). In her memorandum in opposition, Respondent does not address procedural unconscionability and points to different provisions of the contract regarding the mortgage on the marital home and argues that those provisions are contradicting, that there was no mutual assent, and that Petitioner already breached the Agreement, which should have rendered the Agreement invalid. [MIO 14] In addition, Respondent points to other contradicting material terms regarding attorney fees, the marital home, and spousal support, which she maintains make the Agreement unconscionable. [MIO 15-16]

**{10}** Respondent's arguments on appeal arise from the parties' post-Agreement interpretations of the Agreement, and she focuses on ambiguities or conflicts in the terms of the Agreement that increase the potential for breach by both parties or caused a breach. [MIO 15-16] Despite current disagreement about how the Agreement is to be performed, the terms of the Agreement create benefits and obligations for both parties. [RP 569-572] As a result, Respondent has not demonstrated that the terms of the Agreement were "unfairly and unreasonably one-sided" at the time the Agreement was made. *See Peavy by Peavy v. Skilled Healthcare Group, Inc.*, 2020-NMSC-010, ¶ 12, 470 P.3d 218; *Cordova*, 2009-NMSC-021, ¶ 39. [RP 569-572] We therefore agree with the district court that Respondent has not shown that the Agreement is unenforceable due to unconscionability. [RP 662-63]

**Due Process**

**{11}** Respondent continues to argue that she was not provided a full and fair opportunity to testify or present evidence to the district court. [MIO 19-22] In our calendar notice, we explained that Respondent had not identified what evidence or testimony she sought to admit or the district court's reason for denying her request to submit evidence. [CN 10] Respondent acknowledges that there were two separate hearings that both she and her attorney attended as well as the two briefs and affidavits that were filed in support of voiding the Agreement. [MIO 19] As explained in our calendar notice, the district court granted the parties leave to file supplemental briefing, held a status conference at which Respondent testified, allowed the parties to request an evidentiary hearing [3 RP 574-75, ¶¶ 2, 5], and held a hearing "to consider the parties' arguments related to enforcement/adoption of the mediated . . . Agreement" [3 RP 648].

**{12}** Respondent asserts, however, that her new attorney was not familiar with her situation and therefore, did not raise all her issues before the district court. [MIO 19-20] Respondent has provided more information regarding what evidence she sought to admit, which included her medical providers' testimony about her health condition and her capacity to contract, past tax returns, and additional information on the parties' business and accounts. [MIO 21-22] However, Respondent has not explained how this additional evidence and testimony and an additional hearing would have changed the outcome. The record proper reflects, as Respondent has acknowledged, that despite any limitations on in-court testimony, she was able to file multiple briefs, affidavits, and was able to explain to the district court why she no longer agreed to the terms of the Agreement. [3 RP 664] As such, we are unpersuaded that the district court erred by not allowing Respondent to submit more evidence or testify at another hearing. *See Hennessy*, 1998-NMCA-036, ¶ 24.

## Sale of the Marital Home

**{13}** Respondent continues to assert that the district court abused its discretion when it ordered the sale of the marital home before the parties' other assets had been divided. [MIO 23-25] In our calendar notice, we explained that the special master had considered the evidence by both parties, made findings of fact, and recommended to the district court that the marital home be sold. [CN 12-13] We proposed to affirm the district court on the basis that Respondent had not demonstrated which of the special master's findings of fact was not supported by substantial evidence such that the district court erred in adopting the recommendation that the marital home be sold. *See Lozano v. GTE Lenkurt, Inc.*, 1996-NMCA-074, ¶ 15, 122 N.M. 103, 920 P.2d 1057 ("[A]n order or judgment by a district court adopting a special master's report will be upheld on appeal if the special master's findings are supported by substantial evidence."). [CN 14] In her memorandum in opposition, Respondent argues that there was new evidence that "had not been known to the [s]pecial [m]aster" including that Petitioner's argument concerning mortgage payments was moot because due to COVID, there was a stay on mortgage payments. [MIO 24] As such, Respondent maintains that there "was no financial consequence[] of allowing [her] to remain in the home until after the finalization of the divorce." [MIO 24] Respondent's assertions, however, do not challenge any

specific finding of fact made by the special master. As such, we conclude that Respondent has not met her burden on appeal to demonstrate that there was insufficient evidence to support the special master's findings of fact such that the district court erred in adopting the report and ordering the sale of the marital home. *See Mondragon*, 1988-NMCA-027, ¶ 10; *Hennessy*, 1998-NMCA-036, ¶ 24.

**Respondent's Motions**

**{14}** Finally, Respondent argues that her motions filed with this Court, which we denied in the calendar notice should be granted. [MIO 31-34] First, Respondent argues that this Court should grant her motion for stay because the district court "has a pattern of failing to [r]ule on her [m]otions, and/or significantly delays to [r]ule on her [m]otions[,]" and that the district court's failures to grant prior motions are "equivalent to denying her [m]otions on account the [district c]ourt has failed to afford her the relief requested." [MIO 32-33] In our calendar notice, we explained that although Respondent had filed her motion to stay in the district court, the district court has not yet ruled on it, and as such, denial is appropriate. *See* Rule 12-207(B) NMRA (stating that "[a] motion for review of the district court's action may be made to the appellate court, but the motion shall show that the district court has denied an application, or has failed to afford the relief which the applicant requested, with the reasons given by the district court for its action"). [CN 14] Although Respondent requests this Court to rule on her motion for stay, we cannot do so as we are bound by the rules adopted by our Supreme Court. *See State v. Garcia*, 1984-NMCA-009, ¶ 18, 101 N.M. 232, 680 P.2d 613 ("This Court has held that it must give effect to rules adopted by [our] Supreme Court."); *id.* ("This Court does not have the power to change a rule promulgated by [our] Supreme Court."). Accordingly, we conclude that it is appropriate to deny Respondent's motion for stay as premature.

**{15}** Second, Respondent argues again that her motion to amend the docketing statement a second time should also be granted because the statement of preservation and statement of the issues did not transfer to her first amended docketing statement. [MIO 34-35] We denied the motion on the basis that Respondent had not shown good cause, but explained in our calendar notice that Respondent could provide more facts or issues in her memorandum in opposition, which she has done by providing her statement of preservation and additional facts for her issues. [CN 15; MIO 25-31] Accordingly, denial of her motion to amend the docketing statement is still appropriate.

**{16}** For the reasons stated in our notice of proposed disposition and herein, we affirm the district court.

**{17}   IT IS SO ORDERED.**

**KATHERINE A. WRAY, Judge**

**WE CONCUR:**

**JENNIFER L. ATTREP, Chief Judge**

**ZACHARY A. IVES, Judge**