492 A.2d 328

**Debra VILLARREAL, et al.**

v.

**John F. GLACKEN, Personal Representative of the Estate Christina Villarreal.**

**Debra VILLARREAL, et al.,**

v.

**John F. GLACKEN.**

**Nos. 1082, 1185, Sept. Term, 1984.**

Court of Special Appeals of Maryland.

May 13, 1985.

Zelle Debra Gilden and Emma Twigg Clarke, Towson (Lawrence I. Weisman and Weisman and Clarke, Towson, on brief), for appellants.

Clater W. Smith, Jr., Frederick (Thomas C. Nikirk, Frederick, on brief), for appellee.

Argued Before ADKINS, BLOOM and ROBERT M. BELL, JJ.

BLOOM, Judge.

These consolidated appeals involve the estate of Christina Villarreal, who died January 7, 1973. She was survived by her five minor children: Debra, Abigail and Michael Villarreal, the appellants herein, and their half siblings, Mark and Melissa Glacken.[1] Appellants' father, Jorge Villarreal, had died in 1967. The appellee, John F. Glacken, is the father of Mark and Melissa. He had resided with Mrs. Villarreal during the last years of her life.

Appeal No. 1082 is from an order of the Orphans' Court of Frederick County, passed September 19, 1984, which rescinded a prior order of June 11, 1984. The June order had set aside the probate of Mrs. Villarreal's estate; dismissed appellants' Petition to Set Aside Judicial Probate; and affirmed and ratified the administration of Mrs. Villarreal's estate, which had been closed some ten years earlier.

Appeal No. 1185 is from an order of the Circuit Court for Frederick County (Wenner, J.) dismissing, without further leave to amend, appellants' "Third Amended Bill of Complaint," which had sought various forms of equitable and legal remedies (injunctions, accountings, declaratory judgments, specific performance, and money judgments) to recover, among other things, shares of Mrs. Villarreal's estate that appellants claim should have descended to them as heirs but which were fraudulently acquired by appellee through an invalid will.

If there is any truth in appellants' allegations, they have been greatly wronged. Nevertheless, we must affirm the decisions of the orphans' court and the circuit court because it is obvious, on the face of their pleadings, that appellants have slept on their rights and have unreasonably delayed in seeking judicial relief for any wrongs that may have been done them.

---

1. At the time of Mrs. Villarreal's death, Michael was 14 years of age, Abigail was 13, and Debra was 11. Mark and Melissa were 5 and 3, respectively.

## NO. 1082—THE ORPHANS' COURT CASE

### A. *The Will*

On April 10, 1973, there was presented to the Register of Wills of Frederick County, for administrative probate as the Last Will and Testament of Christina Villarreal, a one page handwritten document dated and signed January 6, 1973, the day before Mrs. Villarreal died. The will had been written in Mrs. Villarreal's hospital room by Ralph G. Hoffman, an attorney employed by the appellee. The document read:

I, Christina Villarreal, do hereby make this my Last Will and Testament.

I give, devise and bequeath all my property, real, personal and mixed unto John F. Glacken, absolutely, hereby appointing him as Personal Representative to serve without giving of bond.

Witness my hand and seal this 16th day of January, 1973.

(her mark)

_____X_____ (SEAL)

Christina Villarreal

Signed, sealed, published and declared by the above named testatrix as and for her Last Will and Testament in the presence of us, who, at her request and in the presence of each other have subscribed our names as witnesses this 16th day of January, 1973.

|  | Address |
|---|---|
| Hudson Fesche, M.D. | Westminster, Md. |
| Ralph G. Hoffman | Westminster, Md. |

Mrs. Villarreal, terminally ill with cancer and too weak and too heavily sedated to write her name, had signed the document with an X mark.

### B. *The Proceedings*

The Register of Wills denied administrative probate and referred the papers to the orphans' court with a recommendation for judicial probate. The court granted probate and

appointed appellee Personal Representative of Mrs. Villarreal's estate.   In that capacity, Mr. Glacken conveyed to himself the real estate owned by Mrs. Villarreal at the time of her death, which she had purchased with the proceeds of her husband's estate.   Mrs. Villarreal's estate was closed February 6, 1974.

On April 2, 1984, appellants, purporting to act for their minor half siblings as well as for themselves, petitioned the orphans' court to set aside the probate of their mother's estate.   They asserted that the probate was void because no notice was given them, as interested parties, as required by Md.Est. & Trusts Code Ann., § 5–403(a);  because, contrary to § 5–404, the court neither conducted an examination of the subscribing witnesses nor passed an order waiving such examination;  and because the purported will was not properly executed or witnessed, the testatrix lacked testamentary capacity, and the will was contrary to her intentions. They also alleged that the personal representative and sole beneficiary, by fraud and duress, concealed from them all of the defects in the will and the probate proceedings so that they did not have knowledge of those defects until December 1983.

### C.   *The Decision*

After a hearing on that petition, the orphans' court passed an order nullifying the probate.   Subsequently, however, after two more hearings and upon a motion by the appellee, it voided that order and reinstated and affirmed the original probate proceedings.   In so doing, the orphans' court stated:

The above matters having been heard by the Court on the 14th day of May, 1984, the 15th day of August, 1983, and the 17th day of September, 1984.   Counsel for the respective parties being present and all arguments of Counsel having been heard by the Court, it is the opinion of this Court that:

1) The records of this Court disclose that a hearing was held in this Court prior to the granting of the judicial

probate in the Estate of Christina Villarreal, deceased, and that all parties in interest, or their respective custodians, were aware of the proceeding for judicial probate.

2) That there was a proper appointment of a Personal Representative in the Estate of Christina Villarreal, deceased, in accordance with the Estates and Trusts Laws of the State of Maryland.

3) Sections 5–406 and 5–407 of the Estates and Trusts laws of the Annotated Code of Maryland provide:

"*Section 5–406.* Finality of action in judicial probate.

Except as provided in §§ 5–207 and 5–407, any determination made by the court in a proceeding for judicial probate is final and binding on all persons....

*Section 5–407.* Subsequent proceeding.

A judicial probate may be reopened and a new proceeding held if, following a request by an interested person within 18 months from the death of the decedent, the court finds the existence of any fact which would permit the holding of a proceeding pursuant to § 5–304(b)...."

4) That the Court is of the opinion that Sections 5–406 and 5–407, Estates and Trusts, is [sic] dispositive of the issue of the reopening of the estate of Christina Villarreal, deceased, and that consequently, no law or evidence having been presented to the contrary, the Petition seeking a reopening of this estate should be denied.

### D. *The Issues*

Appellants have asserted a total of eleven issues, of which three relate to the orphans' court proceedings. Those issues, as framed by appellants, are:

1. Is the orphans' court required to hear testimony from witnesses to a will to determine the testamentary capacity of the decedent in accordance with Md. [Est. & Trusts] Code Ann. Sec. 5–404 before granting judi-

cial probate where testamentary capacity was in issue?

2. Can the children of the decedent have their day in court where the orphans' court neglected to notify them of the probate of their mother's will, and [sic] which resulted in the loss of the children's family home to an imposter?

\* \* \* \* \* \*

5. Where a holographic will has been denied administrative probate and where there was a failure to hold a hearing, a failure to call witnesses to a will, and failure to waive the calling of witnesses to the will, and where interested persons have not been notified of the judicial probate, is a purported judicial probate of the will a nullity so that the statute of limitations begins to run when the defects in the judicial probate are discovered?

## E.  *The Record*

■ The record supports the court's findings that there was a hearing prior to probate, that all interested parties or their custodian were aware of the probate, and that there was a proper appointment of a personal representative under the Maryland Code.  There does not appear to have been any formal hearing, but the court had before it a copy of a letter from Mr. Hoffman to the effect that both he and the other subscribing witness, Mrs. Villarreal's physician, were satisfied that Mrs. Villarreal had sufficient capacity to execute a will and that the will in question reflected her testamentary intentions.  The record reflects that the Register of Wills had received from Mr. Glacken a list of interested parties and heirs (Mrs. Villarreal's children) as required by §§ 5–403 and 7–104.  Although there is nothing to indicate that the Register then mailed notices to those heirs and interested parties of the application for judicial probate or the appointment of appellee as personal representative, which would normally be required by §§ 2–210 and 5–403(a), such mailings were not essential in this case

because, according to the personal representative, the heirs and interested parties were all minors residing with him. Under § 1–103(d), notice to the children, therefore, would have been mailed to Glacken as their custodian, but there was no need to send him notice because he was the personal representative. § 1–103(e). In short, the court acted in accordance with its statutory jurisdiction in probating Mrs. Villarreal's will; if appellants were not notified, that was the fault of the personal representative, not the court.

### F. *Finality of Probate*

The issues raised by appellants do not address the basis for the orphans' court's decision, which is the finality of judicial probate after eighteen months from the date of the decedent's death. On that point, the court was absolutely right. Sections 5–406 and 5–407, in conjunction with § 5–304(b), are dispositive of the issue. Section 5–304(b) of the Estates and Trusts Article, incorporated by reference in § 5–407, provides:

(b) *Exceptions.*—An administrative probate may be set aside and a proceeding for judicial probate instituted if, following a request by an interested person within 18 months of the death of decedent, the court finds that:

(1) The proponent of a later offered will, in spite of the exercise of reasonable diligence in efforts to locate any will, was actually unaware of the existence of a will at that time of the prior probate;

(2) The notice provided in § 2–209 [§ 2–210] was not given to such interested person nor did he have actual notice of the petition for probate; or

(3) There was fraud, material mistake, or substantial irregularity in the prior probate proceeding.

The statutory scheme is clear and unequivocal. All determinations in proceedings for judicial probate are final and binding, but probate may be reopened at the request of an interested party if (a) a later will is found, (b) the moving party had not received notice of probate, or (c) there was

fraud, mistake or irregularity in the probate proceedings, *provided* the request to reopen probate is made within eighteen months after the death of the decedent.

■ Section 5–407 is not a statute of limitations. It does not merely bar an action that is not timely brought; its commencement is not delayed by fraud, concealment or lack of knowledge; it is not tolled by infancy or other disability. It is, instead, a limitation on the court's jurisdiction. At the expiration of eighteen months from the death of the decedent, the orphans' court no longer has any power or authority to reopen probate; even at the request of one who was entitled to but did not receive notice; even for fraud, mistake or irregularity. After the eighteen month period, one claiming to have been cheated out of his inheritance, by an invalid will, improper probate, or otherwise, must seek redress in some other tribunal.[2]

## NO. 1185—THE CIRCUIT COURT CASE

### A.  *Appellants' Issues*

The appellants present us with eight issues relating to their appeal from the order of the Circuit Court for Frederick County dismissing their "Third Amended Bill of Complaint" without leave to amend.  We will not reproduce them here.  They are replete with redundancies, and only one of them directly addresses a basis for the court's action. Appellants' issues Nos. 3, 4, 6 and 7 involve questions as to when the statute of limitations begins to run with respect to trusts when there are allegations of fraudulent concealment of the fraud giving rise to the trust.  Issue No. 8 questions whether "duress and threats of duress" toll the running of limitations;  issue No. 9 questions the propriety of rulings on demurrers to the original, amended and second amended bills of complaint;  issue No. 10 questions the court's refusal

---

2. The imposition of a constructive trust by a court exercising equity jurisdiction would appear to be a particularly appropriate remedy for such fraud.

to permit further amendment; and issue No. 11 questions the dismissal of a malpractice claim (one of the counts in the "Amended Bill of Complaint") against Mr. Hoffman, the attorney who drafted Mrs. Villarreal's will.

### B. *Issues 9 and 11*

■ Before discussing the real issues in this case, we will summarily dispose of appellants' issues Nos. 9 and 11. If we appear to give these issues but short shrift, it is because that is all they merit. The court sustained demurrers to the original, amended and second amended bills of complaint with leave to amend. Each time appellants filed an amended complaint that was complete in itself, without reference to the complaint that preceded it, they withdrew and abandoned the prior complaint. *Shapiro v. Sherwood,* 254 Md. 235, 254 A.2d 357 (1969). The rulings on demurrers to the first three bills of complaint, which included the malpractice claim against Mr. Hoffman, therefore, are not before us. *Landay v. Cohn,* 220 Md. 24, 27, 150 A.2d 739 (1959).

We will now address the real issues in this case, which are whether the court erred in sustaining appellee's motion to dismiss appellants' "Third Amended Bill of Complaint" and, if not, whether the court abused its discretion by refusing to permit further amendment.

### C. *The Third Amended Bill of Complaint*

#### – 1. Form –

Appellee's attack upon the "Third Amended Bill of Complaint" was based entirely upon its failure to assert a claim upon which relief might be granted. No objection was voiced as to its form. Nevertheless, before discussing the substantive deficiencies of appellants' fourth attempt to state a cognizable cause of action, we deem it appropriate to comment on the form of the pleading.

The original, amended and second amended bills of complaint were all filed prior to July 1, 1984, the effective date of the new, revised Maryland Rules of Procedure, which eliminated the distinctions between actions in law and equi-

ty. The "Third Amended Bill of Complaint" came under the new rules.

There is now only one form of action, a civil action, Md. Rule 2–301, which begins with a "complaint," Md. Rule 2–302, not a "bill of complaint." Each cause of action must be set forth in a separate count, Md. Rule 2–303(a), and each averment should be simple, concise and direct, containing only such statements as may be necessary to show entitlement to relief. Md. Rule 2–303(b). Appellants' pleading consisted of forty-four numbered paragraphs of redundant allegations and thirteen separately lettered requests, prayers or demands for relief, many of which were inconsistent with each other, but was not separated into counts. This defect is particularly difficult to understand because the original bill of complaint and the first amended bill, filed in equity, were both divided into counts, which was traditionally inappropriate for equity pleading.

– 2. Substantive Defect—Limitations/Laches –

Appellee's response was a Motion to Dismiss, under Md. Rule 2–322(b),[3] which the court granted.

Relying on *Piper v. Jenkins*, 207 Md. 308, 319, 113 A.2d 919 (1955), the court stated, as its sole reason for granting appellee's motion to dismiss, that appellants, for the fourth time, had failed to set forth, with particularity, the reason why the statute of limitations should not apply. The complaint did not say how appellants were kept in ignorance of their rights by any fraud alleged to have been perpetrated by appellee, nor did it set forth any specific averment of facts that would enable the court to determine whether appellants had exercised reasonable diligence to discover

---

**3.** The new rules do not recognize demurrers. Failure to state a claim upon which relief can be granted (substantive deficiency) may be raised by Motion to Dismiss. Defects in form, which could formerly be raised by demurrer, may now be raised by Motion for More Definite Statement, Rule 2–322(d), or by Motion to Strike, Rule 2–322(e).

any fraud which would prevent the running of the statute of limitations.

In substance, appellants asserted that the purported will of their mother was invalid for several reasons, had been fraudulently obtained, was contrary to their mother's intentions, and had been improperly probated. They asked the court to so declare, to set aside the will and the probate, to declare the existence of a trust or create a constructive or resulting trust in the property for their benefit, and to make Mr. Glacken account to them for the property, its rental value and its increases. All of the wrongs complained of had occurred in 1973, but the original bill of complaint in this case was not filed until July 25, 1983.

Somewhat overshadowed by all of the allegations of fraud pertaining to the will and property of Christina Villarreal and the probate of her estate and the violent and fraudulent conduct of appellee that kept appellants in ignorance of the earlier frauds was a claim that Mr. Glacken had fraudulently collected appellants' Social Security benefits after their mother died. Those benefits ceased for each child as he or she attained the age of eighteen years. For Michael, that was in September 1976; for Abigail, in January 1978; and for Debra, in July 1979. Appellants' first assertion of this cause of action was in their Amended Bill of Complaint, filed January 10, 1984.

The statutory period of limitations applicable to actions in law for fraud or deceit or for money received is three years. Md.Cts. & Jud.Proc.Code Ann., § 5–101. The statute, of course, is not *per se* applicable to actions in equity. Equity applies the doctrine of laches, which normally requires that the defendant show some prejudice in addition to and as a result of the delay in bringing the action. *Staley v. Staley*, 251 Md. 701, 248 A.2d 655 (1968); *Boyd v. Mercantile-Safe Deposit & Trust Co.*, 28 Md.App. 18, 344 A.2d 148 (1975). But if there is an action at law analogous to the case before it, a court of equity will apply the statute of limitations applicable to that analogous legal

action. *Desser v. Woods*, 266 Md. 696, 296 A.2d 586 (1972); *Rettaliata v. Sullivan*, 208 Md. 617, 119 A.2d 420 (1956); *Brashears v. Collision*, 207 Md. 339, 115 A.2d 289 (1955). And if that analogous legal action would have been barred, the equity action will also be barred by the mere lapse of time, without the necessity for a showing of prejudice. *Rockshire Civic Association, Inc. v. Mayor and Council of Rockville Planning Commission*, 32 Md.App. 22, 358 A.2d 570 (1976); *see Kaliopulus v. Lumm*, 155 Md. 30, 141 A. 440 (1928).

▇▇▇ The principal remedy sought by appellants was the imposition of a constructive trust, a remedy particularly appropriate where, as here, one party claims that the other fraudulently acquired and continues to hold property which rightfully and equitably belongs to the first party. A constructive trust is a "fraud rectifying trust" created by operation of law. *Bowie v. Ford*, 269 Md. 111, 119, 304 A.2d 803 (1973); *see Grimes v. Grimes*, 184 Md. 59, 40 A.2d 58 (1944); *Clark v. Clark*, 139 Md. 38, 114 A. 722 (1921). The statute of limitations will be applied in bar of such trusts by analogy to the law. *Webb v. Baltimore Commercial Bank*, 181 Md. 572, 581, 31 A.2d 174 (1943); *In re Insolvent Estate of Leiman*, 32 Md. 225, 240 (1870).

▇▇▇ Appellants contend that they have alleged the existence of an express trust. As a general rule, the statute of limitations does not apply to cases of express and continuing trusts, at least until the trustee openly repudiates the trust, adversely claims against the beneficiary or recognizes someone else as beneficiary. *Ridgely v. Pfingstag*, 188 Md. 209, 235, 50 A.2d 578 (1946); *Needles v. Martin*, 33 Md. 609, 619 (1871). The problem with appellants' contention is that this complaint did not allege the existence of an express trust. Based upon a letter written by Mr. Hoffman, a copy of which, taken from orphans' court records, was attached as an exhibit to their complaint, appellants alleged:

The Defendant agreed with the attorney who drew the will that if the property owned by the decedent were left

to him, he would maintain the property for the benefit of the children of the decedent.

Actually, what Mr. Hoffman had written was that he and Mrs. Villarreal's doctor believed the lady was competent to make a will, that she wanted to leave Mr. Glacken the home property, and that the children would benefit thereby because Mr. Glacken indicated he fully intended to maintain the home for the children if the property was left to him. Appellee's expression of intention to maintain a home for the children simply does not constitute a binding agreement to hold the property in trust for them. Furthermore, an agreement to hold real estate in trust would come under the statute of frauds and require a writing signed by appellee. *Bowie v. Ford, supra,* 269 Md. at 118 n. 4, 304 A.2d 803.

Laches and limitations are among the affirmative defenses that must be specially pleaded, even in actions in which the general denial of liability is an acceptable answer. Md. Rule 2–323(g). Consequently, the "proper practice would be to raise limitations by a special plea, Md. Rule 342 c 2(a) [now by separate defense, Md. Rule 2–323(g)] and not by way of demurrer [Motion to Dismiss]." *Gensler v. Korb Roofers, Inc.,* 37 Md.App. 538, 541 n. 3, 378 A.2d 180 (1977). Nevertheless, it has been held that the defense of limitations may be raised by demurrer when it is apparent on the face of the pleadings that an action is barred by limitations. *Desser v. Woods, supra,* 266 Md. 696, 296 A.2d 586; *Miller v. Horowitz,* 172 Md. 419, 191 A. 906 (1937); *Gephart v. Taylor,* 124 Md. 111, 91 A. 772 (1914). This was equally true for equity as well as law. *Hall v. Barlow Corp.,* 255 Md. 28, 255 A.2d 873 (1969); *Berman v. Leckner,* 188 Md. 321, 52 A.2d 464 (1946); *Rockshire, supra,* 32 Md.App. 22, 358 A.2d 570. In any event, no issue was made in the circuit court or here of the impropriety of limitations being raised in the Motion to Dismiss, so we will consider the defenses of limitations and laches to have been raised properly. *See Gensler v. Korb Roofers, Inc., supra.*

■ In the case *sub judice*, all of the wrongs of which appellants complain had occurred considerably more than three years prior to the filing of their suit. In the absence of an indication that the statute of limitations was tolled or did not start to run when the wrongs were committed, the fact that all of appellants' asserted causes of action were barred by limitations or laches was apparent on the face of the "Third Amended Bill of Complaint."

Because appellants were minors when the wrongs of which they complain were committed, they were entitled to the benefit of Md.Cts. & Jud.Proc.Code Ann., § 5–201, to extend the period of limitations. The statute provides, in applicable part, that when a cause of action accrues in favor of a minor, that person shall file his action within three years after attaining his majority. Section 5–201, therefore, is of no comfort to the appellants, the youngest of whom attained her majority in July 1979, over four years prior to the bringing of this action.

What appellants rely upon to prevent their claims from being barred by limitations and laches is Md.Cts. & Jud. Proc.Code Ann., § 5–203, which provides that if a party is kept in ignorance of a cause of action by the fraud of an adverse party his cause of action will be deemed to accrue at the time when he discovered or, by the exercise of ordinary diligence, should have discovered the fraud. The "Third Amended Bill of Complaint" is replete with allegations that appellee fraudulently concealed from appellants the frauds he had committed to deprive them of property that rightfully belonged to them. As Judge Wenner correctly observed, however, there are no allegations as to how they were kept in ignorance of their rights by appellee's fraud or when or how they discovered the fraud, in order to establish that they were diligent. The same problem exists, of course, with respect to appellants' claim that appellee used physical violence and threats of violence to conceal from appellants facts pertaining to their causes of action. There is no explanation as to how such conduct prevented appellants from discovering the wrongs for which they

eventually brought their action. Nor do appellants explain how the "coercive concealment" continued after appellants attained their majorities and left appellee's custody and control, which was more than three years prior to the filing of this suit even for the youngest of them.

Section 5–203 was originally enacted as Chapter 357 of the Laws of 1868. Prior thereto, fraud could be asserted in a court of equity as a basis for preventing the operation of the statute of limitations but could not be relied upon in a replication to a plea of limitations in a court of law. The Act of 1868 was a remedial statute to enable the plaintiff in an action at law to set up the fraud of the defendant in order to avoid a plea of limitations, thereby affording him the same benefit that was available to a complainant in a court of equity. It was an established rule in equity that a party seeking to avoid the consequences of an apparently unreasonable delay in asserting his rights on the ground of ignorance was required to allege and prove not only the fact of ignorance but also when the fraud or concealment was discovered, how it was discovered, and why it took so long to discover it. The purpose of the rule is to enable the court to determine whether the complainant had exercised reasonable diligence. The Act of 1868 imposed the same requirements of allegation and proof upon a plaintiff in an action at law. *Piper v. Jenkins*, 207 Md. 308, 315–19, 113 A.2d 919 (1955).

Thus, whether we view appellants' "Third Amended Bill of Complaint" as asserting either traditionally legal or traditionally equitable causes of action, or both, it is substantively deficient. It does not allege, with respect to wrongs committed up to ten years before suit was filed, when the appellants discovered those wrongs, much less how they discovered them or why it took so long for them to discover the frauds. The court, therefore, did not err in granting appellee's motion to dismiss that complaint.

## D. *Dismissal Without Leave to Amend*

Our examination of all four of appellants' unsuccessful attempts to state a viable cause of action persuades us that Judge Wenner did not abuse his discretion by denying appellants leave to amend upon dismissal of their "Third Amended Bill of Complaint."

### – 1. Prior Pleadings –

The first attempt, labeled "Bill of Complaint" and filed on the equity side of the court, was divided into three counts. In the first count, Abigail and Debra alleged that while they were minors the appellee raped them, sexually abused them, beat them and threatened them, for which torts they sought compensatory and punitive damages. The second count asserted that the funds used by appellants' mother to purchase the home that she devised to appellee were funds she had received for the benefit of appellants. Claiming that those facts give rise to a constructive trust, appellants demanded "that the Court put a *lis pendens* on the home site property" and require appellee to convey the property to them. The third count alleged that Christina Villarreal's will was fraudulently obtained and was void because Mrs. Villarreal was incapable of executing a valid will. Appellants sought the declaration and imposition of a constructive trust and a conveyance of the home property to them.

After appellee's demurrer to the bill of complaint was sustained, appellants abandoned their attempt to recover damages for rape, sexual abuse and battery as well as their "*lis pendens*" claim. Their amended bill, which joined attorney Ralph Hoffman as an additional defendant, was divided into five counts, the first two of which attempted to assert alternative claims for declaratory and injunctive relief based on allegations attacking the validity of Christina Villarreal's will and the probate proceedings. The third count attempted to assert a claim that there was an express trust, as a result of which appellants sought a conveyance of the property to them or money damages in lieu thereof. The fourth count alleged professional negligence by Mr.

Hoffman in connection with the drafting of Mrs. Villarreal's will, for which appellants unexplainably sought damages against Glacken as well as Hoffman. The fifth count alleged that defendant Glacken fraudulently obtained social security benefits payable to appellants for which they illogically demanded an accounting from and damages against Hoffman as well as Glacken. In sustaining appellee's demurrer to the amended bill, Judge Wenner accurately described it as an "absolutely terrible" pleading.

Appellants' third attempt was no improvement over the preceding ones. The second amended bill abandoned the malpractice claim against Mr. Hoffman. Unlike its predecessors, it was not divided into counts. It consisted of thirty-six numbered paragraphs of pleonastic allegations asserting, *inter alia*, improprieties in the making and execution of Mrs. Villarreal's will, the incapacity of the testatrix, improprieties in the probate proceedings, fraudulent concealment from appellants of all of the defects in the will and probate, and various other fraudulent, evil and reprehensible acts by appellee. It also contained twelve prayers for relief, primarily seeking to overturn the probate, to nullify the will and the acquisition by appellee of the decedent's property, to obtain an accounting "of all monies and properties received by the Defendant" as a result of Mrs. Villarreal's death, and to recover a money judgment for the fair rental value of the home property, "plus the fair market value of said property." It utterly failed to address the obvious problem of limitations and laches; it did not explain when and how appellants became aware that they had been wronged and why it took so long for them to make this discovery. For that and other defects, Judge Wenner sustained appellee's demurrer.

– 2.  Finis –

Confronted with a fourth awkward and inadequate effort to state a cognizable cause of action, Judge Wenner decided that a fifth attempt would be no more likely to succeed than the first four. When he announced that he proposed to dismiss the "Third Amended Bill of Complaint" without

further leave to amend, appellants did not request another opportunity to amend nor did they even suggest that they could do so successfully. Appellants' subsequent failure to address, in their appeal brief, reply brief or oral argument, the crucial questions of when and how they discovered the wrongs complained of convinces us that Judge Wenner's conclusion that "enough is enough" was an entirely reasonable and proper one.

JUDGMENTS AFFIRMED.

COSTS TO BE PAID BY APPELLANTS.