**AMERICAN METAL FORMING CORP., Plaintiff,**

v.

**W. David PITTMAN, Jr., et al., Defendants.**

**Civ. A. No. HAR 91–612.**

United States District Court, D. Maryland.

Jan. 6, 1992.

Aron U. Raskas and James P. Ulwick, Baltimore, Md., and Janet M. Nesse, Washington, D.C., for plaintiff American Metal Forming Corp.

Roger Schlossberg, Hagerstown, Md., Trustee of the assets of the estate of Pittcon Industries, Inc.

Michael E. Marr, Baltimore, Md., for defendants W. David Pittman, Jr. and Patrice Kelley Pittman.

## MEMORANDUM OPINION

HARGROVE, District Judge.

The Court has conducted a bench trial in the above-referenced case. Pursuant to agreement between the parties, trial by jury has been waived as to those counts permitting trial by jury. Plaintiffs, American Metal Forming Corporation ("American"), and Roger Schlossberg, Trustee of

the assets of the estate of Pittcon Industries, Inc., have brought this action to recover money damages and to obtain equitable relief as a result of actions allegedly taken by David Pittman, Jr. and Patrice Kelley Pittman ("the Pittmans").

## I.

David Pittman ("Pittman") was the President and sole shareholder of Pittcon Industries, Inc. ("Pittcon"), a company engaged in the manufacture of woods, metals, drywall, and finishings. As such, Pittman exercised absolute control over Pittcon and was responsible for all of its actions. On May 23, 1988, Pittcon filed a voluntary petition for bankruptcy under Chapter 11. On January 13, 1989, the Court appointed Roger Schlossberg as Trustee to run the affairs of Pittcon. In the fall of 1989, the bankruptcy court approved a plan by American to purchase the assets of Pittcon. Plaintiffs bring this action on grounds that several transactions were entered into by the Pittmans while acting as officials for Pittcon, for their personal gain, and to the detriment of Pittcon.

## II.

The first transaction involved an industrial revenue bond ("IRB")[1] transaction entered into by the Pittmans on September 23, 1980. The evidence shows that Pittman, as President of Pittcon, decided that the Corporation should expand, and needed additional space. It is clear to the Court that Pittman was acting as President of Pittcon when he came across a property located at 6409 Rhode Island Avenue, in Prince George's County, Maryland. Citizens Bank of Maryland ("Citizens Bank") owned the property and agreed to sell the building to Pittman, who purchased it with IRB financing. The IRB provided to Pittman 100% financing of $563,000.00 at a very favorable interest rate (below the prime rate). Pittman also used the IRB to purchase certain equipment for use by Pitt-

con. Pittman admitted at trial that Pittcon had the need, the opportunity, and the financial ability to purchase the property and equipment. Nonetheless, the Pittmans purchased the property and equipment in their own name, but pledged the assets of Pittcon as security for the IRB transaction.

After the IRB transaction, the Pittmans leased the property and equipment to Pittcon under long term leases. The terms of the leases coincided with the length of the IRB loan. As a result, the Pittmans built up equity in the property, while Pittcon made lease payments to the Pittmans. The eventual result if the situation continued would be that at the end of the lease terms, the Pittmans would own the property and equipment free and clear, and Pittcon would have to renegotiate with the Pittmans for new leases or go elsewhere to obtain the necessary property and equipment.

Mr. Edward Dahlka, Jr., the President of a major leasing business with twenty-one years experience in the field, stated that the rate the Pittmans charged Pittcon on the equipment leases was almost three times the market rate. (See Plaintiff's Exhibits 300, 301). Further, the evidence shows that Pittcon was responsible for paying the taxes, utilities and repairs, while Pittman enjoyed the tax benefits incident to the ownership of the premises and equipment.

## III.

The second transaction at issue involved another IRB transaction entered into by the Pittmans on November 24, 1985. Pittman stated that Pittcon once again needed to expand into new space. The evidence at trial revealed that Pittman, acting as President of Pittcon, came across property suitable for Pittcon at 6501 Rhode Island Avenue, Prince George's County, Maryland. The Pittmans used the IRB funds to acquire and to refurbish 6501 Rhode Island

---

1. Industrial Revenue Bonds, such as the ones used in this case, are issued by the County to enable businesses to obtain low interest loans. The purpose of the IRBs is to help the businesses expand within the county and employ county residents. As such, the purpose of the IRB's in this case was to assist the corporation in its development, not to benefit the Pittman individuals.

Avenue, and to acquire certain equipment for use by Pittcon. The Pittmans placed these assets in their own name. Again, in order to secure the loan, the Pittmans pledged a security interest in all of the assets of Pittcon, this time to Maryland National Bank, for the amount of $2.2 million. As was the case with the first IRB transaction, the evidence disclosed that Pittcon had the desire and ability to purchase the property and equipment in its own name, without the Pittmans.

After this transaction, Pittman again leased the property and equipment to Pittcon under long term leases, which again coincided with the length of the mortgage. Here, both the rent on the property and equipment exceeded the fair market value of the premises and equipment. The lease of the 6501 property contained an escalation clause of 8% per year, which the evidence shows was at least double the market rate. Mr. Ronald Lipman, a real estate consultant who is an expert with regard to the appraisal and rental values of commercial real estate properties, prepared a market rent analysis of the 6501 property. Lipman found that the rent for the property "is substantially above market by approximately $2.00./sq.ft. and the annual increases imposed by the terms of the lease at 8% far outstrip the market's willingness to pay such increases." Lipman concluded that "the lease for 6501 Rhode Island Avenue was negotiated at an above market level at the point in time it was struck." (Plaintiff's Exhibit 226, at 3.) The Court finds that the lease on the 6501 property was as stated by Mr. Lipman in his analysis. (Plaintiff's Exhibit 226). Mr. Dahlka stated that the rate Pittman charged Pittcon on the equipment leases was almost three times the market rate. (As stated in exhibits 300 & 303).

In addition, Pittcon was responsible for paying the taxes, utilities and repairs on the property.[2] As a result, the Pittmans built equity in the premises and equipment using the lease payments from Pittcon, profited from the lease payments by Pitt-

con, and enjoyed the tax benefits incident to ownership.

The Pittmans' own accountant, Mr. Robert Hauck, stated at trial that looking at the corporate interests alone, it would have been better for the corporation to own the properties than to lease them from the Pittmans. Mr. Stanley Burns, an expert in the field of commercial banking and bank loans stated that, having looked over many loan portfolios in his work, Pittcon could have obtained the IRB loans to purchase the properties and equipment on its own under the same terms that the Pittmans obtained for themselves. In fact, Pittman himself testified that he assumed Pittcon could have done so.

### IV.

■ Plaintiffs argue pursuant to Counts II and III of the Complaint that they are entitled to a constructive trust on the buildings and equipment to which the Defendant took title and then leased back to the Corporation. Counts II and III are premised on different theories under which a Plaintiff is entitled to a constructive trust.

"A constructive trust is the remedy employed by a court of equity to convert the holder of the legal title to property into a trustee for one who in good conscience should reap the benefits of the possession of said property." *Wimmer v. Wimmer*, 287 Md. 663, 668, 414 A.2d 1254, 1258 (1980). The Court finds that a constructive trust is the appropriate remedy under both theories asserted by Plaintiffs.

Under the first theory, pursuant to Count II, there must be "an acquisition of property in which another has some good equitable claim." *Wimmer* at 671, 414 A.2d 1254. This requirement is satisfied because the Pittmans acquired legal title to property and equipment in which the Trustee and American, as successors to Pittcon Industries, Inc., have equitable claims. American purchased all of Pittcon's assets, including all of its causes of action.

"The remedy is applied by operation of law where property has been acquired by

---

**2.** This is with the exception of base taxes on the  property (6501 Rhode Island Avenue).

fraud, misrepresentation, or other improper method, or where the circumstances render it inequitable for the party holding the title to retain it." *Wimmer*, at 668, 414 A.2d 1254. Further, "there must be clear and convincing evidence not only of wrongdoing, but also of the circumstances which render it inequitable for the holder of the legal title to retain the beneficial interest." *Wimmer*, at 668, 414 A.2d 1254.

Clear and convincing evidence presented at trial shows that Pittman, as President of Pittcon, owed a fiduciary duty to the Corporation. Further, the Court finds that Plaintiffs have proven by clear and convincing evidence that Pittman breached his fiduciary duty by engaging in both the IRB transactions and the subsequent lease agreements for his own personal benefit and to the detriment of Pittcon. The purchase of the properties and equipment were clearly corporate opportunities which Pittcon could have purchased on its own under the same favorable terms Pittman obtained for himself. Pittman came across those opportunities as President of Pittcon, and usurped the corporate opportunities for himself. He also breached his fiduciary duty to Pittcon when he caused Pittcon to enter into leases with himself at above the market rate on the property at 6501 Rhode Island Avenue and the equipment. As such, it would be inequitable for Pittman to retain legal title to the properties.

With regard to Count III, Plaintiff asserts that a constructive trust is the appropriate remedy under a confidential relationship theory. There must be "an acquisition of property in which another has some good equitable claim." *Wimmer* at 671, 414 A.2d 1254. As stated above, The Plaintiffs have an equitable claim in the property and equipment at issue.

Further, a confidential relationship must exist. "A confidential relationship exists where one party is under the domination of another, or where, under the circumstances, such party is justified in assuming that the other will not act in a manner inconsistent with his or her welfare." *Wimmer*, at 668, 414 A.2d 1254. Pittman, as the President and sole shareholder of Pittcon, was clearly the dominant party with regard to Pittcon, given that he had the power to make all decisions on behalf of Pittcon. The evidence at trial revealed that a confidential relationship clearly existed between Pittman and Pittcon.

Once a confidential relationship is shown, a presumption arises that confidence was placed in the dominant party and that the transaction complained of resulted from ... abuse of the confidential relationship by which the dominant party profited.... This presumption shifts the burden to the defendant to show the fairness and reasonableness of the transaction. The Defendant's evidence must be clear, satisfactory, and convincing to overcome the presumption. *Wimmer* at 669, 414 A.2d 1254.

Even without the presumption, the evidence at trial clearly showed that Pittman profited from abuse of his confidential relationship with Pittcon, in that Pittman personally benefited from the IRB transactions at the expense of Pittcon. In any event, Pittman has offered nothing to overcome the presumption. Pittman attempted to argue that Pittcon would enjoy tax benefits from the way the transactions were structured, but the facts before the Court clearly show that Pittman benefited from the transaction, while Pittcon was harmed by it. As noted above, Pittman's own accountant begrudgingly agreed on the witness stand that it would have been better for the Corporation to have purchased the properties and equipment itself under the favorable IRB loans.

Thus, pursuant to Counts II and III, the Court finds from the evidence presented at trial that Plaintiffs are entitled to a constructive trust on the properties located at 6409 Rhode Island Avenue, and 6501 Rhode Island Avenue, in Prince George's County, Maryland. The Court further finds from the evidence that Plaintiffs are entitled to a constructive trust over the equipment purchased with IRB bonds at issue in this case.

### V.

In a Memorandum Opinion, this Court previously granted Partial Summary Judg-

ment to Plaintiffs as to Count I of Plaintiffs Complaint. Plaintiffs have stipulated to the dismissal of Counts IV, V, VI, and VII with prejudice.

## VI.

Pursuant to Count VIII, the Court finds that Defendants could, and should, have purchased the buildings and equipment in the name of Pittcon, rather than taking title in their own name. The evidence at trial showed that Pittcon could have purchased the buildings and equipment by servicing the debt with the same large monthly payments it made to the Pittmans under the lease agreements. Because the Pittmans usurped this corporate opportunity, the Trustee and American, as successors to Pittcon, have an equitable interest in the property under 11 U.S.C. § 541(a), which designates as "property of the estate ... all legal or equitable interest of the debtor in property as of the commencement of the case." Pursuant to 11 U.S.C. § 542(a), the Pittmans must "deliver to the Trustee, and account for" all property of the estate in their possession. Thus, the Pittmans must turn the property and equipment over to the Trustee.

## VII.

Plaintiffs, in Count IX of the Complaint, claim a common law breach of fiduciary duty by the Pittmans against Pittcon. At common law, "whenever two persons stand in such a relation to each other that one must necessarily repose trust and confidence in the good faith of the other," a fiduciary duty exists. *Sard v. Hardy*, 34 Md.App. 217, 246, 367 A.2d 525, 541 (1976), *rev'd on other grounds*, 281 Md. 432, 379 A.2d 1014 (1977). As President of Pittcon, Pittman clearly had such a fiduciary relationship to Pittcon.

■ A fiduciary must act in the best interest of the beneficiary without engaging in self-dealing transactions. *See Crawford v. Mindel*, 57 Md.App. 111, 469 A.2d 454 (1984). "[W]hen presented with a business opportunity to fulfill a corporate purpose, [the fiduciary] ... should take advantage of it, not for himself, but for the corporation." *Dixon v. Trinity Joint Venture*, 49 Md.App. 379, 383, 431 A.2d 1364, 1366 (1981); *Faraclas v. City Vending Co.*, 232 Md. 457, 463, 194 A.2d 298 (1963). As discussed above, the evidence at trial revealed that Pittman usurped Pittcon's corporate opportunity to purchase the property and equipment for itself. Pittman took advantage of the favorable IRB's, and entered into lease agreements with Pittcon for the benefit of himself, and to the detriment of the corporation. As such, Pittman breached his common law fiduciary duty to Defendants and is liable to Defendants for the damages sustained by Pittcon.

Plaintiffs argue that they are also entitled to punitive damages under the common law claim for breach of fiduciary duty. The Court finds that Plaintiffs have failed to meet their burden of proof with regard to actual or implied malice, and thus the Court declines to grant punitive damages.

## VIII.

■ Finally, pursuant to Count X, Plaintiffs request that the Court reform the leases for the premises and equipment to reflect the fair market value. Reformation, as it relates to this case, is an appropriate remedy upon the Plaintiff's proving three elements. First, Plaintiffs must show the existence of undue influence. Second, Plaintiffs must prove that the leases were not the agreement intended by the parties. Third, by clear and convincing evidence, Plaintiffs must demonstrate the intention of the parties as originally contemplated at the time the agreement was executed. *Higgins v. Barnes*, 310 Md. 532, 530 A.2d 724 (1987).

■ The evidence has shown that the leases were entered into and induced by the undue influence exercised by Pittman over Pittcon. Obviously, Pittcon would not have intended to enter into leases that were far in excess of market terms. The Court finds that Plaintiffs have proven by clear and convincing evidence that, absent the undue influence of Pittman, the original intention of Pittcon would have been to enter into leases for the property and

equipment which conformed to reasonable market terms. As such, the reformation of the leases in accordance with the market rates shown in Mr. Dahlka's analyses (Plaintiffs Exhibits 302 and 303), and in Mr. Lipman's analysis (Plaintiff's Exhibit 226) is an appropriate remedy in this case.

### IX.

 Defendants have asserted two defenses to the action by Plaintiffs. The Court has considered these defenses and finds that they do not apply in this case. First, Defendants argue under *Villareal v. Glacken*, 63 Md.App. 114, 492 A.2d 328 (1985), that a court of equity should apply the limitations period applicable to an analogous action. As such, Defendants argue, laches in this case should be the period of the applicable statute of limitations in an analogous action at law for a breach of fiduciary duty. The Court finds that this defense fails because Pittman was clearly in control as the debtor-in-possession until the Court appointed Schlossberg as Trustee to run the affairs of Pittcon in 1989. Promptly after they purchased the corporation and discovered Pittman's self-dealing, Plaintiffs filed this lawsuit. Thus, Plaintiffs are not barred by laches.

Defendants also assert the defense of estoppel by acquiescence. Defendants argue that because payments on the leases were made by American after it purchased Pittcon, that Plaintiffs acquiesced to the amount of the lease payments and are now estopped from arguing that the payments were unfairly high. The Court finds that Defendants were in control of Pittcon until 1989, and Plaintiffs promptly brought this action after purchasing Pittcon and after discovering that the lease payments were far above market value. Plaintiff's prompt filing of this action in order to obtain a judicial determination of whether the lease amounts were fair in no way evidences acquiescence to the amount of the payments.

Had Pittcon never filed for bankruptcy, it is doubtful that Pittman's breach of his fiduciary duty to the corporation would have ever come to light. Had Pittman wanted to view himself and his business as one indivisible entity, he could have structured the business differently, perhaps as a sole proprietorship. However, Pittman chose to conduct the business as a corporation, and enjoyed the benefits of corporate status, such as limited liability when the business went bankrupt. In such a case, the liabilities must fall upon the Defendants along with the benefits. By designing the IRB transactions as he did, Pittman engaged in transactions for his personal benefit and to the detriment of Pittcon.

The Court has previously issued an Order setting forth its decision in this case. The case will be referred to a Magistrate Judge for hearing and determination of appropriate damages and for reformation of the lease agreements.