[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION
The above-captioned matter comes before this court upon remand from the Supreme Court pursuant to Rule 16(h) of the Rules of Appellate Procedure. The remand is for the sole purpose of determining whether further proceedings are required before the entry of final judgment in this case. Specifically, this court must determine (1) whether a further order should be made to reimburse defendant for expenditures made in usurpation of a corporate opportunity, or, whether reimbursement should be deprived as further punishment for that usurpation; and (2) whether final judgment and appeal of this case should be postponed pending resolution of a severed counterclaim.
Travel of the Case
Defendants are shareholders of plaintiff corporation, which operates a liquor store in Cumberland, Rhode Island. In 1982, defendants purchased an interest in another Cumberland, Rhode Island liquor store.
Claiming that defendants' purchase was made in usurpation of plaintiff's "corporate opportunity," plaintiff corporation sued. Defendants counterclaimed, but that counterclaim has since been severed from the plaintiff's original claim and remains pending.
Subsequently, a jury found defendants liable for usurping a corporate opportunity of plaintiff and awarded punitive damages to plaintiff in the amount of $10,000. Furthermore, pursuant to the jury's findings, this court imposed a constructive trust upon the usurped property. Thus, the property is now held by defendants/trustees in trust for the benefit of plaintiff/beneficiary.
Following resolution of the original corporate opportunity claim, and pursuant to Rule 16(h) of the Rules of Appellate Procedure, counsel for both sides were before a single duty justice of the Supreme Court of Rhode Island, whereupon the justice asked this court to determine whether the constructive trust requires that defendants be reimbursed by plaintiff in an amount equal to that expended to acquire the trust res. Moreover, because the severed counterclaim remains pending, the Supreme Court asked whether this court will grant Rule 54(b) certification (declaring judgment of this claim "final" for appeal purposes even though the counterclaim pends).
I. Reimbursement
In oral argument, plaintiff contended that defendants are not entitled to be reimbursed, because the jury took this reimbursement possibility into consideration when it returned with a damages figure of $10,000. Thus, in effect, plaintiff asserts that the jury either was actually awarding damages of $48,333 (minus the $38,333 purportedly expended by defendant to acquire the constructive trust res) or simply did not feel that defendants were entitled to any reimbursement. Either way, the $10,000 damages figure remains. Contrariwise, defendants contend that they are entitled to reimbursement of the $38,333, as the jury was not specifically instructed to consider defendants' initial capital expenditure in determining an appropriate remedy for the corporate opportunity usurpation.
This court must first consider whether reimbursement for a capital expenditure such as that made by defendants is ever appropriate when a constructive trust is imposed as a remedy for usurpation of a corporate opportunity. And if so, this court must then determine whether these defendants are entitled to reimbursement.
The contemporary "corporate opportunity" doctrine has its genesis in the case of Guth v. Loft Inc., 23 Del. Ch. 255,5 A.2d 503 (1939). Essentially, the doctrine states that a corporate fiduciary, be it an officer, director, managing shareholder, or shareholder of a close corporation, is not permitted to take advantage of a business opportunity that would, and could, in the normal course of events, be availed of by the corporate body. Frequently, the remedy for breaching this fiduciary duty is, whether exclusively or coupled with damages, the imposition of a constructive trust. This equitable device transforms the fiduciaries from owners of the usurped property into trustees, holding the property in trust for the corporation, now the beneficiary of a constructive trust. See generally, 3 Fletcher Cyclopedia Corporations § 861.1 at 282 (rev'd ed. 1986); see also American Metal Forming Corp. v. Pittman,135 B.R. 782, 787 (D. MD. 1992); Farber v. Servan Land Co.. Inc.,662 F.2d 371, 377-78 (5th Cir. 1981); Borden v. Sinsky,530 F.2d 478, 489-90 (3rd Cir. 1976).
Rhode Island recognizes this prevailing view of corporate opportunity law, which was applied in this case. Sladen v.Rose, 115 R.I. 440, 347 A.2d 409 (1975). However, when a constructive trust is imposed in this corporate opportunity context, it remains to be considered whether the breaching defendant/trustee is entitled to recoup the money expended in usurping the property.
It is evident that the common view is to deny from the defendant/trustee any and all benefit that accrued from the usurped property (such benefit normally being dividends from purchased stock). These traceable benefits are to be held in trust along with the usurped property. See In re AmericanMotor Club, Inc., 109 B.R. 595, 599 (Bkrtcy. E.D.N.Y. 1990);Farber, supra, 662 F.2d at 380. Moreover, upon a finding of particular egregiousness or fraud, punitive damages are often deemed appropriate. See, e.g., Pittman, supra, 135 B.R. at 787. Such was the case after this trial.
However, the aforementioned denial of profits and punitive damages aside, it is also generally accepted that the fiduciary/trustee is entitled to a return of its initial investment. See generally Bogert Trusts and Trustees § 472 at 53-54 (2d ed. 1978). And again, the State of Rhode Island is in accord. In Sladen, supra, 115 R.I. 440, 347 A.2d 409, the Supreme Court of Rhode Island affirmed the Superior Court's determination that a constructive trust imposed following a finding of corporate usurpation is a device that merely returns fiduciary and corporation to the status quo ante. The corporation, via the constructive trust, is put into a position where it may take advantage of the opportunity previously deprived of it. But this does not mean it can receive profits, damages, and the windfall of outright legal title to the usurped property without having to pay for it. Id. 115 R.I. at 445, 347 A.2d at 413.
This reimbursement view is consistent with the corporate opportunity doctrine's prerequisite that the corporation be financially able to take advantage of the opportunity before it can be said to have been usurped from it. See Guth, supra,
23 Del. Ch. at 272, 5 A.2d at 511. It is also consistent with the peculiar nature of the constructive trust device, as explained by the Supreme Court of Rhode Island:
 [i]t is not a trust in which the trustee is to have duties of administration lasting for a period of time, but rather a passive, temporary trust in which the trustee's sole duty is to transfer the title and possession of the property to the beneficiary.
Simpson v. Dailey, ___ R.I. ___, 496 A.2d 126, 128 (1985) (emphasis added); see also Matarese v. Calise, 111 R.I. 551, 563-64, 305 A.2d 112, 119 (1973) ("[t]he finding that a constructive trust exists creates an in personam obligation to convey only, and not an equitable interest in the [trust res]");Desnoyers v. Metropolitan Life Inc. Co., 108 R.I. 100, 112,272 A.2d 683, 690 (1971).
Therefore, unless the jury factored the amount expended, $38,333, into its remedial equation, reimbursement by plaintiff to defendants for the latter's initial capital expenditure is a condition precedent to the transfer of the trust res by defendants to plaintiff. Plaintiff asserted in oral argument that the jury did consider this capital expenditure in determining the remedy in this case. However, this assertion has no empirical base. Because the jury was not specifically instructed to figure the expenditure into its equation, it would be speculative to assume that it did and, thus, the prevailing view favoring reimbursement is applicable.
Accordingly, this court finds that reimbursement must be made to defendants in an amount equal to that originally expended by them to acquire the constructive trust res. Plaintiff may of course take, unconditionally, the $10,000 in punitive damages. However, plaintiff is entitled to the actual usurped property and its proceeds only if it conveys to defendants the purchase price therefor.
II. The Counterclaim
The other issue before this court is whether final judgment should be entered as to the original claim or should be delayed until resolution of the severed counterclaim. R.C.P. 42(b) permits the trial court to "order a separate trial . . . of any . . . counterclaim" when doing so is in the interest of convenience or justice. In 1990, now Presiding Justice Rodgers severed the claim and counterclaim between these parties. Now the original claim has been resolved, but the counterclaim pends as a separate action. It is for this court to determine whether to grant Rule 54(b) "certification" so that the Supreme Court may hear the appeal of the claim now rather than waiting for resolution of the counterclaim.
R.C.P. 54(b) governs the situation in which some, but not all, of the claims between two parties have been resolved. It states:
 When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.
In the absence of this certification for review, there can be no appeal of this matter until the counterclaim is resolved.
Although it is virtually within the complete discretion of the trial court (due to its familiarity with the nuances of the trial), Rule 54(b) certification is not to be granted lightly. The primary purpose of Rule 54 is to avoid piecemeal review by the Supreme Court. And because of this purpose, it is generally accepted that certification will not be granted absent some showing that failure to do so would be palpably improper given the circumstances at bar. See generally Wright and Miller, 10Federal Practice Procedure § 2659 at 96-100 (2d. ed. 1983);Rudd Const. Equip. Co., Inc., v. Home Ins. Co., 711 F.2d 54, 56 (6th Cir. 1983) (case did not qualify as the "infrequent harsh case which justifies a Rule 54(b) certification"); Little Earthv. U.S. Dept. of Housing Urban D., 738 F.2d 310, 313 (8th cir. 1984) (court must discern some hardship or injustice that would occur because of delay); Burlington Northern R. Co. v. Bair,754 F.2d 799, 800 (8th Cir. 1985) ("[t]he policy of all courts is to avoid piecemeal and interlocutory appeals. . . . [n]o showing of hardship or injustice been made.").
In oral argument, the plaintiff asserted that the resolution of the claim is a final judgment and that the counterclaim is a separate cause of action that can be treated as such. However, this begs the issue. As the United States Supreme Court has stated in reference to the federal rule 54(b), which is identical to Rhode Island's, "[n]ot all final judgments on individual claims should be immediately appealable, even if they are in some sense separable from the remaining unresolved claims."Curtiss-Wright Corp. v. General Elec. Co., 446 U.S. 1, 8 (1980). Defendants, on the other hand, left the matter to this court's discretion, noting, however, that there is an acute disharmony between these parties that historically involves disagreements and lawsuits.
Thus, neither party has presented to this court a persuasive reason as to why certification should be granted rather than waiting to settle all of the disputes between these parties before the Supreme Court once and for all. This mutual failure to demonstrate the dangers of delay is in addition to the aforementioned presumption against certification.
Notwithstanding, R.C.P. 54(b) provides three questions that must be answered in the affirmative before this court may grant certification: (1) are there multiple claims for relief or multiple parties involved; (2) has at least one claim or the rights and liabilities of at least one party been finally decided; and (3) is there no just reason for delaying the appeal? As for the first two considerations, a claim and a counterclaim were presented for relief, and one but not both of these claims has been decided.
Third, as for whether there is a "just reason for delay," or lack thereof, the court must examine the two claims to determine whether they are sufficiently independent to justify multiple appeals. This court finds that they are not. Plaintiff's claim contended that defendant fiduciaries usurped an opportunity of plaintiff corporation. Defendants' counterclaim asserts that plaintiff corporation, by and through its president, has deprived them of an accurate accounting and has otherwise acted egregiously and, in fact, illegally, in conducting the affairs of the corporation.
The eventual course of events may prove otherwise, but it appears to this court that the nature of these claims is such that there may be common issues of fact and/or law between them. While the counterclaim is not of the compulsory nature, in essence, each side is accusing the other of acting inequitably and unlawfully with regard to the affairs of plaintiff corporation. Additionally, only time will reveal exactly what the defendants are asserting against plaintiff corporation.
Finally, this case has been a prolonged affair, spanning approximately eight years. Counsel for the defendants intimated just what this implies: that there is more than normal discord in this corporation, which would only be exacerbated by a Supreme Court decision on the one appeal followed by a judgment and appeal as to a separate counterclaim sometime thereafter.
These are a few of the "just reasons for delay" in this instance. The general distaste for piecemeal review, as codified in R.C.P. 54(b), is not overcome in this instance: not only does this court adjudge that the facts and issues relating to the claim and counterclaim are not clearly distinct enough to warrant piecemeal review of the dispute between the two sides, but neither side has presented to this court some alternative, compelling reason calling for immediate review.
Thus, this court finds that the interests of justice and convenience militate against final judgment of this claim until the resolution of the pending counterclaim.
Counsel shall prepare an appropriate order for entry.